# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3663

_____

United States of America,        *
                                      *

        Appellee,           *

                                       *   Appeal from the United States

        v.                     *   District Court for the

                                     *   District of South Dakota.

Tamara Azure, also known as      *
Tamara Wind,              *

                                      *

        Appellant.          *

_____

Submitted: October 21, 2009
Filed: March 4, 2010

_____

Before MELLOY, SMITH, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

On remand from a prior appeal,[1] the district court sentenced Tamara Azure ("Wind") to 180 months of imprisonment on two counts of assault with a dangerous weapon in violation of 18 U.S.C. §§ 1153 and 113(a)(3). In doing so, the district court departed upwardly based on an under-representative criminal history. The court also made an express factual finding that Wind committed an execution-style murder on a different occasion, as alleged in a dismissed count. The court reached its overall sentence by imposing consecutive sentences on the two counts.

_____

[1]United States v. Azure, 536 F.3d 922 (8th Cir. 2008).

Wind appeals, challenging the district court's methodology for determining a criminal-history departure. In addition, she challenges the factual finding regarding murder. Finally, she argues that the district court failed to properly apply the United States Sentencing Guidelines in imposing consecutive sentences and that her overall sentence is unreasonable. We affirm.

I.     Background

We set forth the facts of Wind's case in detail in our prior opinion. See Azure, 536 F.3d at 925–29. Neither party presented new evidence during the post-remand sentencing hearing. Additional facts material to the present appeal include the district court's analysis and actions on remand as well as testimony and evidence regarding the murder as presented at the initial sentencing hearing.

The parties developed evidence during more than fifteen hours of testimony at the initial sentencing hearing. The evidence showed that Wind entered her home with Rick Pickner when Pickner was heavily intoxicated. Wind had been seen arguing with Pickner the night before. A friend of Pickner's who had arrived at the home with Pickner and Wind stated that Wind was agitated when she and Pickner entered her home and that she slammed the door to the home, excluding the friend.

Approximately thirty minutes later, Wind's children discovered Pickner dead on a bed with two knife cuts on his head and a deep, fatal stab wound to his heart. Wind was on the floor with several knife wounds on her left arm and on the left side of her back. Several of Wind's wounds appeared serious, and one punctured her lung. A knife with a broken blade was present. Subsequent tests showed only Wind's blood on the knife. Tests also showed that Pickner had a blood-alcohol level of 0.296.

Wind asserts that Pickner attacked her and she acted out of self-defense. The government attempted to disprove this assertion by showing that Wind had stabbed

herself in order to fabricate a self-defense scenario. For example, the government noted an absence of defensive wounds and an absence of evidence showing a struggle. The government argued that if Pickner had stabbed Wind first, he would have been the last person stabbed, and therefore, his blood rather than Wind's would have been on the knife.

The government also attempted to show that crime-scene evidence proved, regardless of any possible earlier aggression, Pickner had been defenseless when Wind stabbed him. In this regard, a crime-scene expert explained several inferences based upon blood patterns on and around Pickner's body. Primarily, the expert explained that blood patterns showed Pickner received his fatal stab wounds at a time when he was lying down or when standing defenseless at the foot of the bed, immediately before being forced down onto the bed by the stabbing. The expert noted that Pickner did not have blood traveling downward from his wounds, as would be expected if he was standing or attacking Wind when he was stabbed. Also, although Pickner had a fatal stab wound to the heart, and although Wind had several serious stab wounds, the soles of Pickner's feet had no blood on them. Further, the expert explained in detail how the blood patterns on the bedcover where authorities discovered Pickner's body were consistent with Wind stabbing Pickner while straddling his prone body. Specifically, the expert explained how the two bodies positioned on the bed would have caused depressions on the mattress and bedcovers causing blood to pool in certain places and not in others.

An expert for Wind largely conceded that these interpretations of the crime scene were correct, noting that the blood patterns were consistent with Wind having stabbed Pickner while he was lying on the bed or standing motionless at the foot of the bed. Based on this evidence, the district court found that, even if Pickner had attacked Wind and caused her stab wounds, Wind subsequently executed Pickner when he was unable to defend himself. Given this finding, the district court held the government carried its burden of disproving the asserted justification of self-defense.

The district court also reviewed Wind's criminal history based on undisputed statements in the presentence investigation report ("PSR") and testimony from the initial sentencing hearing. The court assigned hypothetical criminal-history points for the dismissed murder count and for other conduct not counted in the formal criminal-history computation due to age or the absence of criminal convictions. Through this exercise, the court assigned hypothetical criminal-history points sufficient to place Wind in the highest criminal-history category, Category VI. In our discussion below, we detail the evidence and admissions the court relied upon in assigning hypothetical criminal-history points.

As an alternative means of explaining its criminal-history departure, the court produced a private log describing its own experience in sentencing. The court referenced several defendants it previously had sentenced and explained why the court viewed Wind as meriting a Category VI criminal history. Wind objected to the court's use of the private log because the court had not provided notice of the log to the parties prior to the resentencing hearing.

Based on its offense-level computations and the adjusted criminal-history category, the district court arrived at an advisory Guidelines range of seventy-seven to ninety-six months for the each of the two counts. Without the criminal-history adjustment these ranges would have been thirty-seven to forty-six months based on a Category I criminal history. The court then applied the 18 U.S.C. § 3553(a) factors and determined that an overall term of incarceration of 180 months was appropriate. In reaching this number, the court imposed consecutive sentences of ninety-six and eighty-four months. The court referenced United States Sentencing Guideline § 5G1.2 and expressly held that concurrent sentences would not be sufficient to reach an appropriate overall term of incarceration given the facts of this case.

II.    Discussion

We address the murder finding, the criminal-history computation, and the overall sentence separately.  Although Wind renews her notice-based arguments regarding the court's personal log of prior sentencings, we do not address this issue further.  As explained below, we find no error in the district court's criminal-history analysis based on hypothetical criminal-history points.  As such, it is unnecessary to address the district court's alternative personal-sentencing-log analysis.

A.    Murder

On appeal, Wind challenges the district court's rejection of her self-defense justification.  The district court was required to make findings for sentencing purposes under the preponderance-of-the-evidence standard, and we review the district court's factual determinations only for clear error.  United States v. Branch, 591 F.3d 602, 611 (8th Cir. 2009).  Here, we find adequate support for the district court's findings.  Combined with the absence of defensive wounds on Pickner's arms or hands, Pickner's blood-alcohol level, and the events leading up to the stabbings, the crime-scene evidence as described above sufficiently supports the district court's finding that Wind stabbed Pickner when he was unable to defend himself.

Wind largely emphasizes undisputed factual details regarding her own stab wounds.  She asks that we infer from the facts of her wounds that Pickner must have stabbed her and that she did not stage the scene for a self-defense justification by stabbing herself.  These arguments, however, provide no basis for disturbing the district court's ruling.  Having determined that Wind fatally stabbed Pickner after any possible altercation and at a time when Pickner was defenseless, the district court's rejection of Wind's self-defense justification did not require the court to reject Wind's claim that Pickner first stabbed her.  Whether or not Pickner first stabbed Wind, self-defense cannot justify the murder of a helpless person who has ceased to be a threat.

Because the record adequately supports the district court's findings, and because Wind's arguments regarding her own wounds are immaterial to the court's findings, we reject her challenge to the murder determination.

### B. Criminal History

In general, conduct not resulting in a criminal conviction, felony convictions that are more than fifteen years old, or misdemeanor convictions that are more than ten years old are not included in criminal-history calculations. See U.S.S.G. § 4A1.2(e)(1) & (2). When assessing whether a criminal-history calculation adequately represents the seriousness of a defendant's past conduct, however, courts may consider older convictions and instances of prior conduct that did not result in convictions. See U.S.S.G. § 4A1.3 (a) (1) & (2) (describing types of information that may support upward departures based on criminal history). Findings regarding past conduct not resulting in convictions may not rely solely on evidence of prior arrests. See U.S.S.G. § 4A1.3(a)(3). The rules of evidence, however, do not apply in the context of sentencing hearings, and courts may rely on hearsay or other typically inadmissible evidence if that evidence bears sufficient indicia of reliability. See United States v. Aldridge, 561 F.3d 759, 767 (8th Cir. 2009) cert. denied, — S. Ct. —, 2010 WL 58648 (Jan. 11, 2010); U.S.S.G. § 6A1.3(a). Also, "unless a defendant objects to a specific factual allegation contained in the PSR, the court may accept that fact as true for sentencing purposes." United States v. Moser, 168 F.3d 1130, 1132 (8th Cir.1999).

On remand, the court explained its assignment of hypothetical criminal-history points to six specific instances of Wind's conduct. We address each instance below. Wind argues that several of these instances should not receive any hypothetical criminal-history points because, in some instances, the evidence as to the past conduct is insufficient, or in other instances, her conduct suggests self-defense. She does not, however, present any compelling arguments specifically contesting the number of

hypothetical points assigned to each cited instance of past conduct. Nor does she argue, as she did in the first appeal, that the district court misallocated a burden of proof as to any issues of self-defense as to these instances of prior conduct.

### (i) 2003 Assault of Rick Pickner

At the initial sentencing hearing, Randy Pickner (Rick Pickner's brother) testified that, in 2003, he witnessed Wind attempt to attack Rick Pickner with a knife and that he (Randy) stopped the attack. The district court was entitled to credit this testimony, which was not hearsay. The court assigned three hypothetical criminal-history points to this prior conduct.

### (ii) 1995 Battery of Leonard Azure

Also at the initial sentencing hearing, several different hearsay reports described Wind cutting the face of her then-husband, Leonard Azure, with broken glass or with a knife. Although each individual report was hearsay (specifically, officials repeating what Leonard Azure had said), the redundant nature of the reports lends reliability as do corroborating statements by the officials who observed the cuts on Leonard Azure's face.

Further, we note that Wind did not object to paragraph seventy-one of the PSR describing a drunken fight in which Wind cut Leonard Azure's face with a bottle. See United States v. Lee, 570 F.3d 979, 982 (8th Cir. 2009) ("In determining whether the Government has met its burden, the district court may accept any undisputed portion of the PSR as a finding of fact.") (quotation omitted). Wind received a ninety-day suspended sentence from a tribal court for this assault and battery. The tribal court dismissed a related charge of child neglect as part of a settlement agreement as to this conduct.

Wind objected generally to the subsequent paragraph of the PSR, paragraph seventy-two, which involved a different incident. She stated in her objection to paragraph seventy-two that she denied assaulting Leonard Azure. As noted, however, paragraph seventy-two referred to a different incident. Accordingly, regarding PSR paragraph seventy-one and the assault and conviction referenced therein, there was no objection and there also was supporting testimony in the form of redundant, corroborated hearsay. The district court assigned three criminal-history points for the conduct described in paragraph seventy-one. Although the court was by no means required to assign three criminal-history points based on this conduct, we cannot say that its factual determination was clearly erroneous or that the assignment of points constituted error.

(iii)    1994 Damage to Property and Resisting Arrest

The PSR noted the existence of an arrest report for an incident in 1994 when Wind broke some windows and then resisted arrest, all while drunk and belligerent. She now argues that reliance on this incident is a violation of the prohibition against basing an upward departure solely upon an arrest report. See U.S.S.G. § 4A1.3(a)(3). However, Wind failed to object to the PSR paragraph describing this incident, and as such, the district court was entitled to accept the underlying facts as set forth in that paragraph. Lee, 570 F.3d at 982. The district court did not err in assigning one hypothetical criminal-history point for this incident.

(iv)    1981 Battery upon a Pregnant Woman

It was permissible to apply two criminal-history points to a 1981 conviction for conduct in which Wind (then seventeen years old) beat a pregnant woman. Wind's only objection to the PSR paragraph as to this incident was an age-based objection. For the purpose of assessing the under-representative nature of an actual criminal-history computation, however, it is permissible to consider a battery committed at age

seventeen upon a pregnant woman.  <u>See</u> U.S.S.G. § 4A1.2(d)(2)(A).  Consideration of an older conviction for a violent crime committed at age seventeen is particularly appropriate in the sentencing of a defendant with a long pattern of violent behavior.

(v)     Driving Under the Influence

It is undisputed that Wind was convicted of driving under the influence in South Dakota and that this conviction merits one criminal-history point.

(vi)    Murder

The dismissed murder charge, as found on remand and as discussed above, supports the district court's assignment of three criminal-history points.

Looking only at these six instances of conduct, Wind has thirteen hypothetical criminal-history points, a sufficient criminal history to explain why the district court viewed her past conduct as similar to a Category VI offender.  In addition, the Government and the court expressed their views that her uninterrupted history of violent behavior coupled with an undisputed history of neglecting her children justified looking back in time and assigning points to these incidents.  While the district court was not required to assign this many hypothetical points to her prior behavior, it was permissible given the overriding finding that her extended history of violence led to what the court viewed as the execution-style murder of an unconscious or semi-conscious victim.  Because we find no error in the court's assignment of hypothetical criminal-history points, and no overarching abuse of discretion, we need not discuss additional, challenged aspects of the court's criminal-history analysis.

We note that several instances of conduct for which the court assigned hypothetical criminal-history points were alcohol-related and appear to have been instances of mutual aggression in the context of domestic disputes.  The court, at the

initial sentencing and on remand, however, viewed these instances of past conduct as evidence of Wind's violent tendencies and indicative of her danger to society. We cannot say the district court clearly erred in any of its findings or abused its discretion in its criminal-history based departure.

C.    Substantive Reasonableness and Consecutive Sentences

"We review a sentence for an abuse of discretion. And, with limited exception, a district court's decision to impose a consecutive or concurrent sentence is reviewed only for reasonableness." United States v. Lee, 545 F.3d 678, 680 (8th Cir. 2008) (per curiam) (internal citation and footnote omitted). Here, we note that the plea agreement Wind entered into with the government expressly stated that the government could assert the dismissed count of murder for sentencing purposes. It also stated that Wind faced a potential term of imprisonment of twenty years given the statutory maximums applicable to her two counts of assault.

The district court expressly considered 18 U.S.C. § 3553(a) and U.S.S.G. § 5G1.2, which generally recommends the imposition of concurrent sentences. The court also noted the long history of violence and child neglect culminating in Wind's murder of Pickner. In its statement of reasons for imposing a 180-month sentence, the court cited § 5G1.2 and stated:

> The advisory guideline range after the changes made by the Court is 77 to 96 months on each count. The Court found that concurrent sentences would not be sufficient under the facts of the case. Neither count carries an adequate statutory maximum and, therefore, consecutive sentences must be imposed to the extent necessary to achieve the total punishment.

Undoubtedly, this is a case where the overall sentence is largely dependent upon a factual finding by the district court under the preponderance-of-the-evidence standard. Wind emphasizes in her brief that, at the initial sentencing, the court was

reluctant to find an execution-style murder. She also emphasizes that, again at the initial sentencing, the court expressed concern that the "tail was wagging the dog" in that conduct not related to the counts of conviction appeared to be the primary driving factor for the 180-month sentence. On remand, however, and upon further review of the evidence, the district court firmly concluded that Azure had murdered Pickner not in self-defense. The court put to rest its previously stated concerns as to the "tail wagging the dog" and imposed a sentence reflective of its valid concern with Wind's lengthy and serious history of violence.

We note also that our court has rejected the possibility of requiring heightened standards of proof in cases such as this where a sentencing factor proven merely by the preponderance of the evidence drives the overall sentence. United States v. Villareal-Amarillas, 562 F.3d 892, 898 (8th Cir. 2009) ("[C]oncerns about the tail wagging the dog . . . were put to rest when [United States v. Booker, 543 U.S. 220 (2005)] rendered the Guidelines advisory.") (internal citation omitted). Finding no clear error in the district court's factual determinations, and viewing the overall sentence in light of these findings, Wind's sentence is not substantively unreasonable.

III.    Conclusion

We affirm the judgment of the district court.

_____

-11-