# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1680

_____

United States of America,

Appellee,

v.

Dexter Curruth,

Appellant.

          \* \
          \* \
          \* \
          \*   Appeal from the United States \
          \*   District Court for the \
          \*   Eastern District of Arkansas. \
          \* \
          \*      [UNPUBLISHED] \
          \*

_____

Submitted: March 14, 2011 \
Filed: August 5, 2011

_____

Before SMITH, ARNOLD, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Dexter Curruth pleaded guilty to possessing with the intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced him to 51 months' imprisonment on each count, to run concurrently. On appeal, Curruth argues that the district court procedurally erred at sentencing by applying the base offense level provided by U.S.S.G. § 2K2.1(a)(3). For the following reasons, we affirm.

_____

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

I. *Background*

Curruth pleaded guilty to one count of possessing with the intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Prior to sentencing, the presentence investigation report (PSR) noted that Curruth purchased a .223-caliber semiautomatic rifle and a 30-round magazine for the rifle on December 31, 2008. Thus, the PSR determined that Curruth should have a base offense level of 22 for an offense involving a semiautomatic firearm capable of accepting a large-capacity magazine, pursuant to U.S.S.G. § 2K2.1(a)(3)(A)(i). The PSR calculated a total offense level of 24 and a criminal history category of II, yielding an advisory Guidelines range of 57 to 71 months' imprisonment.

Curruth objected to the PSR's base offense level of 22. Curruth based his objection on the absence of the 30-round magazine when police searched his residence and found the .223-caliber semiautomatic rifle.

At the sentencing hearing, the government called Agent David Oliver from the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Agent Oliver testified that he interviewed Donald Gustavos, who told Agent Oliver that he sold Curruth the .223-caliber semiautomatic rifle, the owner's manual, a sling, and a 30-round magazine on December 31, 2008. According to Agent Oliver, Gustavos said that he had placed all the items in the plastic box provided by the gun manufacturer. Agent Oliver further testified that Curruth had admitted to firing the .223-caliber semiautomatic rifle at some point. On cross-examination, Agent Oliver conceded that when he and other officers searched Curruth's residence on January 13, 2009, they did not find the 30-round magazine, although they did find the manufacturer's plastic box and the owner's manual. He stated that the rifle could, "[i]n theory," be fired without the magazine, by placing a single bullet in the rifle's chamber.

Based on the parties' arguments and Agent Oliver's testimony, the district court overruled Curruth's objection, explaining:

> I'm going to overrule the objection because it's unrefuted in the presentence report that Mr. Curruth purchased the magazine and the gun for cash, and that it's also undisputed through Mr. Oliver's testimony that Mr. Curruth has fired the weapon, and the Court finds more likely than not that he used the magazine when he fired the weapon. That doesn't mean that he actually did, because it is possible to fire the weapon without a magazine, but I think more likely than not, he used the magazine because that's usually what's done. People don't usually take guns like this and put one bullet in it and fire it and put another bullet in and fire it. Usually they use the magazine.

Thus, the court determined that Curruth's base offense level was 22. The court then applied a four-level enhancement for possessing the firearm in connection with another felony offense, pursuant to U.S.S.G. § 2K2.1(b)(6). It also granted a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.[2] Therefore, the court determined that Curruth's total offense level was 23, and his criminal history category was II, yielding an advisory Guidelines range of 51 to 63 months' imprisonment.

After considering the sentencing factors in 18 U.S.C. § 3553(a), the court sentenced Curruth to concurrent sentences of 51 months' imprisonment on each count.

## II. *Discussion*

Curruth argues that the district court procedurally erred by calculating a base offense level of 22. First, he asserts that the district court based its decision on an erroneous interpretation of the Guidelines, which call for an increased offense level

---

[2]Although the PSR recommended a two-level reduction, the court granted a third level, pursuant to U.S.S.G. § 3E1.1(b), upon the government's motion.

if a high-capacity magazine was "in close proximity to the firearm." U.S.S.G. § 2K2.1, cmt. n.2. Curruth maintains that the district court incorrectly interpreted this to mean *temporal*, rather than *spatial*, proximity. Thus, he argues that the court could only apply the heightened offense level if the 30-round magazine had been found attached or in close physical proximity to the .223-caliber semiautomatic rifle during the search of his residence on January 13, 2009. Second, Curruth contends that the government failed to prove that the 30-round magazine was *ever* in close physical proximity to the .223-caliber semiautomatic rifle. Although Curruth admitted to firing the rifle after purchasing it, he did not state whether he used the 30-round magazine at that time. Curruth asserts that the only other evidence showing proximity—Agent Oliver's testimony about Gustavos's statements—was unreliable hearsay.

The government argues that the district court correctly determined Curruth's base offense level pursuant to § 2K2.1(a)(3)(A)(i). First, the government notes that the court and the government agreed at sentencing that § 2K2.1(a)(3)(A)(i) required physical proximity between the high-capacity magazine and the firearm. The government, however, disputes Curruth's assertion that the two items had to be in proximity at the time his residence was searched on January 13, 2009. Instead, the government maintains that the court could apply this Guideline solely on the basis that Curruth possessed both the magazine and the rifle on December 31, 2008—when he was a convicted felon prohibited from possessing such items. Second, the government asserts that ample evidence supports the district court's finding that the 30-round magazine was in close physical proximity to the .223-caliber semiautomatic rifle on at least two occasions: when Curruth purchased the magazine and rifle from Gustavos on December 31, 2008, and when Curruth fired the rifle on an unknown date.

"We review all sentences . . . for an abuse of discretion." *United States v. Rutherford*, 599 F.3d 817, 820 (8th Cir. 2010). In the process, "[t]his court reviews the district court's findings of fact for clear error, and its interpretation and application of the guidelines de novo." *United States v. Ault*, 598 F.3d 1039, 1040 (8th Cir. 2010).

-4-

The Guidelines provide that a person convicted of being a felon in possession of a firearm should have a base offense level of 22 if "the offense involved a . . . semiautomatic firearm that is capable of accepting a large capacity magazine." U.S.S.G. § 2K2.1(a)(3)(A)(i). Application Note 2 to § 2K2.1 defines a "semiautomatic firearm capable of accepting a large capacity magazine" as:

> a semiautomatic firearm that has the ability to fire many rounds without reloading because *at the time of the offense* (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm.

(Emphasis added.) Thus, the Guideline provides for an offense level of 22 if the high-capacity magazine was in close physical proximity to the firearm capable of accepting that magazine "at the time of the offense." Nothing in the Guideline requires that the items be in proximity to one another when they are actually seized by law enforcement officers. Instead, the relevant inquiry requires determining the time of the defendant's "offense."

The Guidelines define an "offense" as "the offense of conviction *and all relevant conduct* under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1, cmt. n.1(H) (emphasis added). In turn, the Guidelines define "relevant conduct" as "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, *in preparation for that offense*, or in the course of attempting to avoid detection or responsibility for that offense." *Id.* § 1B1.3(a)(1) (emphasis added). Nothing in § 2K2.1 would indicate that the word "offense," as used in the application notes, was intended to mean something different than the definition provided in the application note to § 1B1.1. Therefore, "the time of the offense," for purposes of determining whether the base offense level in § 2K2.1(a)(3)(A)(i) should

apply, includes "relevant conduct," i.e., the defendant's acts taken in preparation for the offense.

Using these definitions, Curruth's conduct on December 31, 2008, qualifies as part of his "offense." The indictment charged him with being a felon in possession of a firearm (specifically, the .223-caliber semiautomatic rifle) on January 13, 2009. At the very least, his purchase of the rifle on December 31, 2008, could be considered an act in preparation for his offense and, thus, relevant conduct for Guidelines purposes. Therefore, Curruth would be eligible for a base offense level of 22 if the evidence showed that the 30-round magazine was in proximity to the .223-caliber semiautomatic rifle on December 31, even if the magazine was not in proximity to the rifle on January 13 when his residence was searched.

The undisputed evidence shows that the 30-round magazine was in close physical proximity to the .223-caliber semiautomatic rifle on December 31, 2008. Because Curruth never objected to the PSR's factual allegation that he purchased the magazine and the rifle from Gustavos on that date, the district court could accept it as true for sentencing purposes. *United States v. Azure*, 596 F.3d 449, 454 (8th Cir. 2010). Moreover, Agent Oliver testified at the sentencing hearing that Gustavos told him that he sold Curruth the magazine and rifle and gave them to Curruth in a plastic box. Although hearsay, the court could rely on Gustavos's statements, especially since they were corroborated by the fact that officers found, at Curruth's residence, several of the items that Gustavos had identified. *See id.* ("The rules of evidence . . . do not apply in the context of sentencing hearings, and courts may rely on hearsay or other typically inadmissible evidence if that evidence bears sufficient indicia of reliability."). Accordingly, the district court did not clearly err in finding that the 30-round magazine was in proximity to the .223-caliber semiautomatic rifle at the time of Curruth's offense. Thus, the court properly determined that his base offense level should be 22.

### III. *Conclusion*

For the foregoing reasons, we affirm the judgment of the district court.

_____