United States Court of Appeals

For the Eighth Circuit

_____

No. 24-1409
_____

United States of America

*Plaintiff - Appellee*

v.

Antoine Ray Thomas

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Southern
_____

Submitted: December 19, 2024
Filed: February 10, 2025
[Unpublished]
_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.
_____

PER CURIAM.

Antoine Thomas pled guilty to conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 924(g)(1) and 924(a)(2). He appeals

his sentences, contending the district court[1] erred by attributing 50 pounds of methamphetamine to him based on a text message from a co-conspirator. Finding no clear error, we affirm.

In late 2021, law enforcement officers received tips that large amounts of methamphetamine and counterfeit fentanyl pills were entering South Dakota from California. The investigation soon focused on a small group consisting of Thomas, his brother Tyrin, their cousin Stevie, and an associate named Lyric. Officers identified Thomas as a key person who frequently arranged the delivery of packages containing controlled substances. Thomas, Tyrin, and Lyric shared addresses and stored contraband in various apartments or storage units.

On February 10, 2022, an officer from the Sioux Falls Police Department stopped Thomas's vehicle for a traffic infraction. When the officer approached the vehicle, he detected a strong odor of marijuana and initiated a vehicle search. The search yielded 549.1 grams of methamphetamine in multiple plastic baggies, 31 grams of suspected fentanyl pills (labeled "M30"), 185.9 grams of marijuana, $3,600 in cash, two firearms, bulk packaging, and a digital scale. Thomas was arrested.

Investigators obtained recorded jail calls and text messages from various phones. The text messages contained references to "monthly" shipments. In one text message conversation, Stevie complained to Lyric about how Thomas was short on money after dealing large amounts of methamphetamine over time, stating that "Tony sold over 50 pounds nd aint have shit to show before he got popped [arrested]." Stevie also criticized Lyric and Thomas for not saving drug proceeds. Law enforcement viewed the text discussion as an internal complaint among co-conspirators about Thomas's inability to account for the proceeds and failure to manage the proceeds properly. Officers also reviewed shipment information of packages being shipped from California to Sioux Falls that reportedly contained five

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

to ten pounds of methamphetamine each, as well as thousands of dollars in Western Union money transfers.

Thomas pled guilty to conspiracy to distribute at least 500 grams of methamphetamine. At sentencing, an officer testified about the text messages referencing monthly deliveries of five to ten pounds of methamphetamine, Thomas's role in receiving and selling methamphetamine and fentanyl, and Stevie's mid-conspiracy text about Tony selling over 50 pounds. Thomas objected to the drug quantity and to its characterization as actual methamphetamine as speculative since it had never been tested. He contended the 50-pound figure came from a single text by Stevie, who had an incentive to exaggerate, and even if the conspiracy involved shipments of five to ten pounds, not all the drugs were properly attributable to him.

The district court credited Stevie's text indicating Thomas had sold over 50 pounds of methamphetamine, noting co-conspirators usually have no motive to inflate drug quantities in private messages. It also treated the text discussion about the lack of drug proceeds as a frank, internal complaint among co-conspirators. The district court further found the government had failed to show all 50 pounds was "actual" methamphetamine. With those findings, Thomas's base offense level was determined to be 36 plus two levels were added for possession of a gun. Thomas was in criminal history category III, which yielded a Sentencing Guidelines range of 235 to 293 months. The court imposed a 240-month sentence on the conspiracy count and a concurrent 180-month term for the firearm offense.

On appeal, we review Thomas's objections to the district court's factual findings on drug quantity for clear error and defer to the district court's credibility findings unless they are implausible. See United States v. White, 447 F.3d 1029, 1032 (8th Cir. 2006). Determining drug quantity at sentencing does not require the same level of proof as a conviction; the court may consider relevant information without regard to its admissibility at trial, provided the information has sufficient indicia of reliability. See United States v. Azure, 596 F.3d 449, 454 (8th Cir. 2010); U.S.S.G. §6A1.3(a).

Here, the district court found Stevie's text message credible. The government bolstered the message's reliability with evidence of shipping and financial records as well as the officer's detailed description of the operation's scope—which included at least six monthly shipments of five to ten pounds. Although Thomas speculates that Stevie's message was hyperbole or exaggeration, the district court was free to credit the government's interpretation of the evidence. See United States v. Buford, 42 F.4th 872, 876 (8th Cir. 2022) (noting that when the quantity of drugs is established through a witness's testimony, the issue is one of credibility). As to Thomas's claim about purity, he prevailed on this issue below and the court treated the controlled substance as a mixture, rather than actual methamphetamine.

For the foregoing reasons, the district court did not clearly err in its findings relating to the Sentencing Guidelines calculation. The judgment of the district court is affirmed.

_____