# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2715
_____

United States of America,

*Plaintiff - Appellee*,

v.

Arman Nshanian,

*Defendant - Appellant.*

_____

No. 14-2937
_____

United States of America,

*Plaintiff - Appellee*,

v.

James Arthur Nash, Jr., also known as Art Nash,

*Defendant - Appellant.*

_____

Appeals from United States District Court
for the Western District of Missouri - Kansas City

Submitted: November 16, 2015
Filed: May 4, 2016

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

COLLOTON, Circuit Judge.

A jury convicted Arman Nshanian and James Nash, Jr., of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371, and wire fraud, in violation of 18 U.S.C. § 1343. The district court[1] sentenced both men to terms of 42 months' imprisonment. Nshanian and Nash argue on appeal that their sentences are substantively unreasonable. Nshanian also challenges the district court's denial of his motion for judgment of acquittal and the application of a two-level increase for obstruction of justice under the sentencing guidelines. We affirm.

I.

In early 2005, LeAnn Turner, a real estate agent in Kansas City, Missouri, and Jerome Howard, a businessman in California, began operating a fraudulent real estate investment scheme. Turner, with the help of appraisers, mortgage brokers, and other real estate agents, located properties that were for sale in the Kansas City area. Turner then offered to purchase a property for $125,000 to $150,000 more than the seller's asking price. To justify the inflated offers, Turner told the sellers—who were not involved in the scheme—that the surplus funds covered the costs of improvements

---

[1]The Honorable Greg Kays, Chief Judge, United States District Court for the Western District of Missouri.

that the buyers intended to make to the properties. In reality, however, Turner syphoned the excess loan proceeds to herself and other members of the conspiracy. Because lenders were unwilling to wire the extra funds directly to the buyers, each buyer established a fictitious management company to receive the funds.

Howard had two primary functions in the conspiracy: he found buyers for the properties, and he helped buyers with poor credit apply for loans. To increase a buyer's creditworthiness, Howard purported to employ them in lucrative, fictitious positions in his company, Infinite Link Communications. The buyer's loan applications and closing documents reflected falsely that the buyer received a substantial salary as an executive at Infinite Link. Howard and Turner also included other misrepresentations in the documents.

When Howard contacted Nshanian and Nash near the beginning of 2006, they both worked as deputies in the Los Angeles County Sheriff's Department. Nshanian had received a conditional real estate salesperson license from the California Bureau of Real Estate in 2003. To receive the license, Nshanian completed a course that covered basic principles of real estate investment and sales, including fiduciary duties, financing, and property valuation. He passed a 150-question exam covering those topics. The license permitted Nshanian to act as a real estate salesperson if he was employed by a real estate broker, but Nshanian never worked in such a position. His conditional license was suspended in January 2005 for failure to take classes required to obtain a full license, and the license expired in 2007.

With Howard's assistance, Nshanian and Nash purchased properties in the Kansas City area. Nshanian purchased one home for $750,000, and he received $100,000 of the loan proceeds at closing. He also attempted to purchase another property, but the deal was never completed. Nash purchased two properties, one for $540,647 and the other for $520,047, and received $100,000 of the loan proceeds at each closing. To finalize the purchases, both men signed closing documents that

contained numerous material misrepresentations. Both men also suggested that family members purchase properties with Howard and Turner; Nshanian received $22,000 from his sister after she purchased two properties. Apart from the Kansas City scheme, Nshanian and his wife also completed and signed a loan application that contained similar misrepresentations to purchase a home in California.

After the scheme was discovered, a grand jury charged twenty-six people as co-conspirators in two multiple-count indictments. Nshanian and Nash were charged with wire fraud and conspiracy to commit wire fraud. At trial, both men argued that they acted in good faith and were unaware that the documents they signed contained misrepresentations. The jury convicted Nshanian and Nash of one count of conspiracy to commit wire fraud, Nshanian of two counts of wire fraud, and Nash of four counts of wire fraud.

At sentencing, the district court determined an advisory guideline range for Nshanian of 87-108 months but varied downward to a term of 42 months' imprisonment. For Nash, the court arrived at an advisory range of 57-71 months' imprisonment and sentenced him to a term of 42 months.

II.

A.

Nshanian first argues that there was insufficient evidence to support his convictions, and that the district court should have granted his motion for judgment of acquittal at the close of the evidence. We review the denial of a motion for judgment of acquittal *de novo*, viewing the evidence in the light most favorable to the jury's verdict. *United States v. Hill*, 750 F.3d 982, 987 (8th Cir. 2014). We will direct a judgment of acquittal only when no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

To obtain a conviction for conspiracy to commit wire fraud, the government was required to prove that a conspiracy with an illegal purpose existed and that Nshanian knew of the conspiracy and voluntarily participated in it. *United States v. Clay*, 618 F.3d 946, 950 (8th Cir. 2010) (per curiam). The substantive wire fraud charges required proof that Nshanian joined a scheme to defraud, intended to defraud lenders, reasonably could foresee that interstate wire communications would be used, and participated in a scheme in which wires were in fact used. *United States v. Louper-Morris*, 672 F.3d 539, 555-56 (8th Cir. 2012). The jury may consider all of the facts and circumstances in determining whether a defendant had the requisite knowledge or intent. *See United States v. Idriss*, 436 F.3d 946, 950 (8th Cir. 2006).

We conclude that there was sufficient evidence to support the jury's verdict. Nshanian argues that he was unaware of the fraud orchestrated by others, and that he acted in good faith without the requisite mental states necessary to support his convictions. The jury reasonably could infer, however, that Nshanian knew of the conspiracy and scheme to defraud, and that he intended to defraud lenders. Howard testified that he discussed the requirements necessary to purchase a property with Nshanian and his wife and told them that they could earn $100,000 for every property they purchased. His testimony, if believed, established that Nshanian and his wife created a fictitious management company and a bank account to receive their portion of the loan proceeds. The testimony, if credited, also showed that Howard informed Nshanian that he would not qualify on his own for the financing necessary to purchase the properties, and that Howard and Turner would modify the documents so that Nshanian would qualify. Nshanian's admissions to Special Agent Stacy Banks of the FBI corroborated Howard's account, and credibility determinations about Howard's testimony are within the province of the jury.

The loan application and closing documents that Nshanian signed and initialed to complete the purchase contained several misrepresentations that were necessary to obtain financing and finalize the deals. Nshanian's documents stated that he was

single although he was married; that he had worked for Infinite Link as the company's Vice President of Operations for four years when he did not hold that position; that his monthly income was $19,295 per month when it was actually $6500 per month; and that he intended to use the purchased property as his primary residence when he had no such intention. The documents also warned signatories that they could be punished criminally for knowingly misrepresenting facts in the documents.

Given this evidence, the jury reasonably could infer that Nshanian was aware of the investment scheme and intended to defraud lenders when he signed and submitted the documents. Nshanian's experience as a law enforcement officer and his familiarity with real estate law and transactions further support the inference. That Nshanian submitted documents with similar misrepresentations to purchase his California home bolsters the conclusion that he acted with knowledge and intent. A reasonable jury could conclude that Nshanian committed the charged offenses, and the district court did not err in denying Nshanian's motion for judgment of acquittal.

Nshanian next argues that the district court erred at sentencing when it imposed a two-level increase for obstruction of justice pursuant to USSG § 3C1.1. The increase applies when the district court finds by a preponderance of the evidence that a defendant committed perjury by willfully testifying falsely on a material matter. USSG § 3C1.1 & comment. (n.4(b)); *United States v. Dunnigan*, 507 U.S. 87, 94-95 (1993). To apply the increase, the district court must make an independent finding that the defendant obstructed justice. *Dunnigan*, 507 U.S. at 95. It is preferable for the district court to address each element of perjury in a separate and clear finding, but it is sufficient if the court makes a finding that "encompasses all of the factual predicates for a finding of perjury." *Id.*

Nshanian complains that the district court did not make an adequate finding that he committed perjury. At the sentencing hearing, the district court found that Nshanian "knew what he was doing" in the real estate transactions, and that "these

representations that he denied he made . . . I think amount to obstruction or impeding the administration of justice in that he testified untruthfully." S. Tr. 12. This finding is adequate to show that the district court made a finding independent of the jury's verdict.

Although the district court did not state expressly that Nshanian's false testimony was willful, the record is clear that the court recognized its obligation to consider whether inaccurate testimony resulted from confusion, mistake or faulty memory. S. Tr. 10; *see* USSG § 3C1.1, comment. (n.2). We therefore construe the court's finding of "obstruction of justice" to encompass a finding of willfulness. In view of Nshanian's prior study to be a real estate agent, testimony describing the information that Howard discussed with Nshanian concerning the loan documents, and the centrality of the testimony to the charges, there was ample reason for the court to find that Nshanian willfully provided false testimony. The district court neglected to discuss whether the false testimony was material, but this court has affirmed independent findings of obstruction of justice, even without explicit mention of each factual predicate, where the finding is strongly supported by the record. *E.g.*, *United States v. Kessler*, 321 F.3d 699, 703 (8th Cir. 2003); *United States v. Brown*, 311 F.3d 886, 890 (8th Cir. 2002); *United States v. Esparza*, 291 F.3d 1052, 1055-56 (8th Cir. 2002). The district court here pointed to a particular portion of Nshanian's testimony that plainly concerned a material matter, namely, whether Nshanian knew that there were misrepresentations in loan applications. Under these circumstances, the district court's finding was adequate, and application of the two-level increase under § 3C1.1 was not clearly erroneous.

Nshanian also challenges his 42-month sentence as substantively unreasonable, asserting that it created an unwarranted sentencing disparity among similarly situated defendants. He cites the 36-month sentences imposed on Howard and Turner and the probationary sentences received by other convicted buyers. But when one defendant asserts on appeal that similarly situated co-conspirators were sentenced differently in

different proceedings, and all sentences are within the range of reasonableness, "there is no principled basis for an appellate court to say which defendant received the 'appropriate' sentence." *United States v. Fry*, 792 F.3d 884, 892-93 (8th Cir. 2015). In any event, the district court had adequate reasons to sentence Nshanian differently than the others. The other defendants all pleaded guilty to charges, but Nshanian refused to accept responsibility for his actions and obstructed justice. Nshanian's sentence, which represented a substantial downward variance from the advisory guideline range, was not unreasonable.

B.

Nash also contends that his sentence is substantively unreasonable. Whereas Nshanian complains that the district court did not give sufficient weight to the need to avoid unwarranted sentencing disparities, Nash contends that the district court gave that factor too much weight. Nash asserts that the district court abused its discretion by imposing identical sentences on him and Nshanian, and that he, Nash, was treated too harshly. *Cf. United States v. Lazenby*, 439 F.3d 928, 934 (8th Cir. 2006).

Assuming for the sake of analysis that the statutory direction to avoid unwarranted sentence disparities might refer to differences among co-conspirators rather than national disparities, *cf. Fry*, 792 F.3d at 892, and that identical sentences for dissimilar defendants would run contrary to 18 U.S.C. § 3553, the district court reasonably arrived at the same sentence for these two former sheriff's deputies. Their offense conduct was similar: They formed management companies and bank accounts with their wives, signed documents that contained misrepresentations, purchased properties, and suggested the scheme to other family members. They both refused to accept responsibility and obstructed justice by testifying falsely at trial. Nash even points out that the men offered nearly identical mitigation evidence at sentencing.

It is true that the sentencing guidelines recommended a longer term of imprisonment for Nshanian based on the amount of loss attributable to each defendant. But the guidelines, of course, are advisory, and the district court was required to determine an appropriate sentence in light of all the factors set forth in § 3553(a). Nash ended up with a lower advisory guideline range, and he did not have Nshanian's experience with earning a real estate license, but he was convicted on four substantive counts versus Nshanian's two, and he earned $200,000 from his participation in the conspiracy compared with Nshanian's $122,000. Nash contends that he deserved credit for cooperating with authorities, yet he did not earn a motion for reduction based on substantial assistance, and it was reasonable for the court to give the cooperation minimal weight. Given the wide discretion available to the district court, it was not an abuse of discretion to conclude that the similarities between these two offenders outweighed the differences, and that a 42-month term was appropriate for both men.

\*    \*    \*

The judgment of the district court is affirmed.

_____