# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2506

_____

United States of America

*Plaintiff - Appellee*

v.

Cedric McDonald,

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa

_____

Submitted: February 9, 2016
Filed: June 24, 2016
[Published]

_____

Before SMITH and COLLOTON, Circuit Judges, and ERICKSON,[1] District
Judge.

_____

PER CURIAM.

_____

[1] The Honorable Ralph R. Erickson, Chief Judge, United States District Court
for the District of North Dakota, sitting by designation.

A jury convicted Cedric McDonald of possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924(e)(1), and acquitted McDonald of possession of stolen firearms, in violation of 18 U.S.C. § 922(j). The district court[2] sentenced McDonald to a term of 210 months' imprisonment. McDonald argues on appeal that the district court erred in: (1) finding McDonald qualified for an obstruction of justice enhancement pursuant to U.S.S.G. §3C1.1; (2) failing to provide a two-level reduction in McDonald's offense level for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(a); and (3) denying McDonald's motion for a judgment of acquittal or, in the alternative, a new trial. We affirm.

## I. *Background*

The evidence against McDonald begins with a burglary of Leslie Castor's Fort Dodge, Iowa home. On February 15, 2014, Mrs. Castor left her residence for approximately an hour between 9:30 and 10:30 p.m. While she was away, someone entered her home and purloined six firearms belonging to her husband, a king size bed comforter, and a plastic jug containing a few hundred dollars of change.

A woman of unusual resourcefulness, Mrs. Castor immediately conducted an independent investigation of the theft and discovered that a male had deposited $201.95 into a change redemption machine at 10:26 p.m. on February 15, 2014, at a nearby Hy-Vee Store. Mrs. Castor notified the police, who subsequently obtained a video as well as receipt records for the transaction.

On May 2, 2014, Ronnie Shivers was apprehended and found in possession of approximately one gram of crystal methamphetamine by Detective Luke Fleener. Shivers told Detective Fleener he was on probation for simple possession. Detective Fleener asked Shivers if he was interested in cooperating and agreed not to arrest or

---

[2] The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

charge Shivers if he was willing to act as a confidential informant. Shivers agreed and began to cooperate.

Sometime later, Shivers and McDonald (who were lifelong friends) were visiting with Shivers' cousin, Dartonya "Doc" Shivers. McDonald told Ronnie and Doc that he had a number of stolen firearms he was looking to sell. Ronnie Shivers reported this conversation to Detective Fleener, who directed him to call McDonald and tell McDonald that he had an acquaintance who was interested in buying the firearms.

During a recorded conversation, Ronnie Shivers arranged to buy eight firearms from McDonald for $1,000.00. Shivers was to pick up the firearms from McDonald. During a second recorded conversation, however, McDonald told Shivers he could not meet in person but that Shivers should retrieve the firearms from a white Mitsubishi parked outside of Doc's residence.

Shivers and an undercover agent traveled to Doc's residence and removed the firearms that were wrapped in Mrs. Castor's stolen comforter from the vehicle. Ten firearms were taken, even though Shivers and McDonald had agreed on eight firearms. After the pick-up, Shivers made another recorded call to McDonald, complaining that he had been forced to take the firearms "in broad daylight." McDonald informed Shivers that they needed to settle up since Shivers had taken all ten firearms, rather than the eight they had agreed upon.

Shivers drove Detective Fleener's vehicle to McDonald's residence to settle up the account. Shivers paid McDonald $1,200.00 for the ten guns. McDonald rebated Ronnie $50.00 for the additional risk involved in the "broad daylight" acquisition. This conversation was also recorded, as Detective Fleener's car was equipped with video and audio recording equipment.

On December 16, 2014, law enforcement agents obtained and executed a search warrant on Doc's home and the white Mitsubishi. The search yielded indicia of ownership of the Mitsubishi including insurance documents in McDonald's name. In the house, agents found items related to McDonald's business and McDonald's personal mail.

Agents identified some of the firearms as having belonged to Mrs. Castor's husband. At trial, McDonald admitted that he was the individual in the Hy-Vee video but denied that he was involved in the burglary of the Castor residence. He testified that he had acquired the coins before playing a pool game with Doc. McDonald also testified that the Mitsubishi belonged to Doc but that he had insured the vehicle in his name as an accommodation to Doc.

McDonald testified that the telephone recordings were taken out of context and misleading. He claimed that he was originally approached by Shivers about purchasing what he believed was stereo equipment. McDonald claimed that he was "set up" by Shivers. McDonald testified that he agreed with Shivers to make some orchestrated phone calls and say what Shivers wanted him to say in order to "help out" Doc and Shivers on a gun deal that they needed to make. McDonald further testified that his decision to assist Shivers with the firearms was induced by smoking marijuana and a desire to help out a friend. Specifically, McDonald testified:

> So he [Shivers] comes - - well, we smoking the weed, and he says he needs somebody to talk to the guy that - - because he owes the guy some money. And I was like, man, I'm not touching the guns. I'm not dealing. I'm not even going near them. And he's like, well, just talk to the guy for me, and it's probably the only way I'm going to get your money for you and stuff like that.

McDonald also testified that he agreed to make the phone call, so long as he did not have to touch the firearms or meet the people. McDonald claimed he never saw or handled the firearms presented at trial.

At the close of the evidence, McDonald moved for an acquittal pursuant to Fed.R.Crim.P. 29, which the district court denied. After the verdict, McDonald renewed his motion for an acquittal and, in the alternative, for a new trial under Fed.R.Crim.P. 33. Both motions were denied.

The district court determined the advisory sentencing guideline range for McDonald was 210–262 months, finding that McDonald was an armed career criminal, he had obstructed justice by perjury, and he was not entitled to credit for acceptance of responsibility. The district court sentenced McDonald to a low-end guideline sentence of 210 months' imprisonment.

II. *Discussion*

A.    Obstruction of Justice.

McDonald argues that the district court erred at sentencing when it imposed a two-level increase for obstruction of justice pursuant to U.S.S.G. § 3C1.1. "We review the district court's factual findings underlying an adjustment for obstruction of justice for clear error, giving great deference to the sentencing court's determination." *United States v. Brown*, 539 F.3d 835, 839 (8th Cir. 2008) (citing *United States v. Whiting*, 522 F.3d 845, 849 (8th Cir. 2008)). The increase applies when the district court finds by a preponderance of the evidence that a defendant willfully testified falsely under oath and the false testimony related to a material matter. *United States v. Nshanian*, __ F.3d __, 2016 WL 2342909, *3 (8th Cir. May 4, 2016).

The district court must make an independent finding that the defendant committed perjury. *United States v. Dunnigan,* 507 U.S. 87, 94-95 (1993). While "[i]t is preferable for the district court to address each element of perjury in a separate

and clear finding," a district court's finding regarding perjury is sufficient so long as "all of the factual predicates" for perjury are encompassed. *Nshanian*, __ F.3d __, 2016 WL 2342909, *3 (8th Cir. May 4, 2016) (quoting *Dunnigan*, 507 U.S. at 95).

McDonald claims that he is being unfairly punished because he chose to exercise his constitutional right to testify. He asserts that the conflicting testimony between Ronnie Shivers and himself cannot constitute proof of perjury by a preponderance of the evidence. The district court noted that McDonald's testimony must necessarily have been rejected, at least in part, by the jury in order to convict him of being a felon in possession of firearms:

> So I'm going to go ahead and find that - - well, I think the jury would have had to have found some of his testimony untruthful in order to convict him. I realize I have an independent obligation to make that judgment myself, and I make the same judgment that the jury did. I thought some of the defendant's testimony was believable and credible and truthful but some of it was not. And he denied possession of firearms.

The district court made a finding independent of the jury's verdict. Although the district court did not expressly state that McDonald's false testimony was willful, the record is clear that McDonald's denial that he possessed firearms in spite of all the other evidence presented at trial was not the product of confusion, mistake or faulty memory. Finally, the district court neglected to address whether the false testimony was material; however, this court has affirmed a finding of obstruction of justice where the finding is "strongly supported by the record." *Nshanian*, __ F.3d __, 2016 WL 2342909, *3 (8th Cir. May 4, 2016). The district court pointed to a specific portion of McDonald's testimony that concerned a material matter–that is, that he denied possession of the firearms despite overwhelming evidence to the contrary. Under the circumstances, the district court's finding was adequate, and application of the increase under § 3C1.1 was not clearly erroneous.

B.    Acceptance of Responsibility.

McDonald next argues that he was entitled to a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).  We review for clear error a district court's denial of a reduction under § 3E1.1. *United States v. Ervasti*, 201 F.3d 1029, 1043 (8th Cir. 2000). Absent extraordinary circumstances, obstruction of justice "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1 cmt. (n.4); *see United States v. Jones*, 612 F.3d 1040, 1047 (8th Cir. 2010).  To determine whether a case is extraordinary, a district court should consider "the totality of the circumstances, including the nature of the [defendant's] obstructive conduct and the degree of [defendant's] acceptance of responsibility." *United States v. Honken*, 184 F.3d 961, 968 (8th Cir. 1999).

Under the circumstances of this case, the mere fact that the jury acquitted for stolen firearms and convicted for possession of firearms by a convicted felon is not an extraordinary circumstance. This is not a case where McDonald admitted all the facts and contested the applicability of the statute to his circumstances or that the statute was subject to a constitutional challenge. Rather, McDonald claimed he never possessed the firearms, a fact rejected by the jury.  We see no ground for finding an extraordinary circumstance exists in this case.  The district court did not err in denying McDonald a reduction for acceptance of responsibility.

C.    Motion for Judgment of Acquittal.

McDonald also argues that there was insufficient evidence to support his conviction, and that the district court erred in denying his motions for judgment of acquittal.  We review the denial of a motion for judgment of acquittal *de novo*, viewing the evidence and all reasonable inferences in the light most favorable to the jury's verdict.  *United States v. Hill*, 750 F.3d 982, 987 (8th Cir. 2014).  We will direct a judgment of acquittal only when no reasonable jury could have found the defendant guilty beyond a reasonable doubt.  *Id.*

To obtain a conviction for felon in possession of a firearm, the government must prove: (1) McDonald had previously been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) he knowingly possessed at least one firearm; and (3) the firearm had been in or affected interstate commerce. *United States v. Garcia-Hernandez*, 803 F.3d 994, 996 (8th Cir. 2015). McDonald stipulated that he had previously been convicted of a felony and that the firearms had traveled in interstate commerce. At issue is whether McDonald knowingly possessed the firearms in question.

To establish this element, it is sufficient if the government proved McDonald had actual or constructive possession of the firearm. *United States v. Garrett*, 648 F.3d 618, 622 (8th Cir. 2011). "Constructive possession requires that the defendant 'has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself.'" *United States v. Evans*, 431 F.3d 342, 345 (8th Cir. 2005) (quoting *United States v. Maxwell*, 363 F.3d 815, 818 (8th Cir. 2004)). While constructive possession can be established by circumstantial evidence, the government must show a sufficient nexus between the defendant and the firearm. *Id.* (citing *United States v. Howard*, 413 F.3d 861, 864 (8th Cir. 2005)).

McDonald first argues the evidence was insufficient because the jury was not presented with any credible evidence that he ever physically possessed the firearms in question or exercised any dominion and control over them. McDonald admitted to being the person in the Hy-Vee Store video where he was seen depositing a large number of coins in a change redemption machine in close proximity to the time in which the nearby Castor residence was burglarized and a jug of coins was taken. Firearms located in the Mitsubishi parked at Doc's residence were wrapped in a comforter taken from the Castor residence. Agents identified some of the firearms as belonging to Mr. Castor. The government presented multiple recorded phone calls where McDonald set up a transaction to trade firearms for money, discussed payment for the firearms, identified the location of the firearms, and even apologized for

having Shivers retrieve the firearms during the daytime. In addition, the vehicle in which the firearms were found was insured in McDonald's name and McDonald told Shivers where the vehicle was located. Because the evidence was sufficient to support the jury's finding that McDonald knowingly possessed the firearms in question, we will not disturb the verdict.

McDonald next argues that the evidence was insufficient because his testimony was more credible than Ronnie Shivers. When reviewing a district court's denial of a motion for judgment of acquittal, we "do not weigh the evidence or assess the credibility of witnesses; that is the province of the jury." *United States v. White*, 794 F.3d 913, 918 (8th Cir. 2015) (citing *United States v. Johnson*, 474 F.3d 1044, 1048 (8th Cir. 2007)). We decline McDonald's invitation to reweigh the evidence and assess witness credibility, as it is not within the permissible scope of our review.

Lastly, McDonald argues the conviction rested on mere speculation because the acquittal on count two is irreconcilable with a conviction on count one. "We have previously held, when considering what are characterized as inconsistent verdicts, that we only ask whether the government presented sufficient evidence to support the conviction." *United States v. Opare-Addo*, 486 F.3d 414, 416 (8th Cir. 2007). This is because "[w]e are reluctant to delve into the minds of the jurors to determine the reasons for apparently inconsistent verdicts." *Id.* Even when the evidence rationally supports two conflicting hypotheses, we will not disturb the conviction. *United States v. Griffith*, 786 F.3d 1098, 1102 (8th Cir. 2015) (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). Viewing the evidence in light most favorable to the verdict and accepting all reasonable inferences tending to support it, we cannot say no reasonable jury could have found McDonald knowingly possessed the firearms in question. Because the evidence was sufficient to allow a jury to conclude McDonald knew of the firearms, we will not disturb the verdict.

D.     Motion for a New Trial.

Upon a defendant's motion, a court may grant a new trial "if the interest of justice so requires."  Fed.R.Crim.P. 33(a). We review a district court's denial of a motion for new trial for abuse of discretion.  *United States v. Caldwell*, 83 F.3d 954, 955 (8th Cir. 1996) (citing *United States v. Cruz*, 993 F.2d 164, 167 (8th Cir. 1993)). McDonald's sole contention for a new trial is the purported inconsistent verdicts. Even accepting McDonald's contention, "[i]nconsistent verdicts are not, on their own, sufficient grounds for reversal or a new trial. A jury may acquit a defendant as to one or more charges for any number of reasons, including an inclination to be merciful, and yet come to the reasonable conclusion that the defendant was guilty of other related charges."  *United States v. Whatley*, 133 F.3d 601, 606 (8th Cir. 1998). Sufficient evidence supports the conviction.   The district court's denial of McDonald's motion for a new trial was not an abuse of discretion.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____