# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2473

_____

United States of America

*Plaintiff - Appellee*

v.

Lonnie Alonzo Howard, also known as Lonnie M. Howard

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: June 19, 2020
Filed: October 6, 2020

_____

Before GRUENDER, WOLLMAN, and KOBES, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Lonnie Alonzo Howard was convicted of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). The district court[1] applied the Armed Career Criminal Act (ACCA), 18 U.S.C.

---

[1]The Honorable Daniel L. Hovland, then Chief Judge, United States District Court for the District of North Dakota.

§ 924(e), and sentenced Howard to 210 months' imprisonment. Howard argues that the evidence was insufficient to support his conviction and that the district court erred in admitting certain evidence. He also contends that two of his prior state convictions do not constitute qualifying offenses under the ACCA. We affirm.

## I. Background

Howard was on parole through the state of North Dakota when on November 19, 2015, law enforcement officers executed a search warrant at the Bismarck, North Dakota, apartment he shared with Marybeth Fix. Officers encountered Anthony White in the kitchen area, Samantha Glass in the hallway, and Howard in the main bedroom. A .45 caliber Hi-Point pistol, a loaded magazine, and various ammunition were found in the main bedroom. Howard was charged in federal court in January 2017 with one count of being a felon in possession of a firearm and three counts of being a felon in possession of ammunition.

Howard was released to a halfway house pending trial. He absconded and was charged with escape in violation of 18 U.S.C. § 751(a). A deputy sheriff attempted to apprehend Howard in April 2018, after stopping him for a traffic infraction. The deputy's dash cam recorded the stop, during which Howard resisted arrest and fled from the scene. The district court granted the government's motion to join the escape case with the firearm and ammunition case. See Fed. R. Crim. P. 13. Howard thereafter pleaded guilty to escape.

At trial on the remaining charges, the government called several witnesses whose testimony supported the contention that Howard knowingly possessed a firearm and ammunition. Over Howard's objections, the district court admitted evidence of a pawn shop ticket indicating that Howard had pawned a firearm in July 2015 and the dash cam video of the April 2018 traffic stop. The district court issued limiting instructions to the jury about the disputed evidence. The jury found Howard

guilty of the one firearm and three ammunition counts, which the district court later merged into one count of conviction. The district court denied Howard's motion for judgment of acquittal.

At sentencing, the district court determined that Howard had three qualifying offenses and therefore was subject to an enhanced sentence under the ACCA. The court sentenced Howard to 30 months' imprisonment on the escape count, to run concurrently with the 210-month sentence on the firearm and ammunition count.

## II. Discussion

### A. Sufficiency of the Evidence

Howard argues that the evidence was insufficient to support his conviction and that the district court thus should have granted his motion for judgment of acquittal. We review *de novo* the denial of a motion for judgment of acquittal, viewing the evidence and all reasonable inferences in the light most favorable to the jury's verdict. United States v. McDonald, 826 F.3d 1066, 1072 (8th Cir. 2016) (per curiam). We reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id.

Howard contends that the government failed to prove that he knowingly possessed a firearm and ammunition. Knowing possession may be proved by a showing of actual or constructive possession. Id. "[C]onstructive possession requires both knowledge that the contraband is present and dominion over the premises where the contraband is located." United States v. Ways, 832 F.3d 887, 897 (8th Cir. 2016). "Dominion over the premises where the contraband is located may give rise to a strong inference of knowledge in some contexts, but when there is joint occupancy of a residence, dominion over the premises by itself is insufficient to establish constructive possession." United States v. Patton, 899 F.3d 560, 563 (8th Cir. 2018)

(internal citations and quotation marks omitted).  "In joint occupancy cases, there must be some additional nexus linking the defendant to the contraband." Id. (quoting United States v. Wright, 739 F.3d 1160, 1168 (8th Cir. 2014)).

Although the apartment here was jointly occupied, there was ample evidence that Howard exercised dominion over the main bedroom.  Fix testified that Howard had been living at the apartment for about a year and that Glass had been staying there for about a month. Fix explained that Howard slept in the main bedroom and that the only individuals with access to the main bedroom were Fix, Howard, their children, and Glass.  Glass testified that she sometimes slept in the main bedroom with Howard.  A parole officer who had visited the apartment when supervising Howard confirmed that Howard occupied the main bedroom.  There was no evidence that Anthony White had at any time entered the main bedroom.

The evidence presented also was sufficient to show a nexus between Howard and the firearm and ammunition.  According to their testimony, neither Fix nor Glass had seen the pistol or the ammunition that were found during the search.  Fix had spent the night before the search in her children's room and had left with the children before officers arrived.  Glass had spent that night in the main bedroom.  Soon after she awoke, Howard told her that the police had arrived, as he moved back and forth near the window.  Glass testified that a basket of children's toys had been moved from its usual spot to the floor near the foot of the bed and that she had not previously noticed a backpack in the main bedroom.  The basket held the pistol and the round-filled magazine.  Officers found a loose bullet and a safe containing ammunition within the backpack.  Officers also found two rounds of ammunition in a nightstand drawer that held mail addressed to Howard, along with his prescription medication.  Furthermore, the government presented evidence that Howard had asked Fix to fabricate text messages between her and an ex-boyfriend saying that the ex-boyfriend had left his backpack, gun, and clothes at the apartment.  See United States v. Cross, 888 F.3d 985, 991 (8th Cir. 2018) (evidence of jail call between Cross and his

-4-

girlfriend, in which he tried to convince her to claim ownership of the gun, "supported Cross's possession"). In light of the evidence and the inferences that fairly could be drawn therefrom, a reasonable jury could reject Howard's mere presence defense and find that he knowingly possessed a firearm and ammunition.[2]

## B. Evidentiary Challenges

Howard next argues that the district court abused its discretion in admitting certain evidence. See United States v. Buckner, 868 F.3d 684, 687 (8th Cir. 2017) (standard of review). He claims that the July 20, 2015, ticket indicating that he had pawned a firearm that day constituted impermissible character evidence. The government was required to prove that Howard knowingly possessed a firearm and ammunition, however, and the evidence of Howard's four-month earlier firearm transaction tended to show that he knowingly and intentionally possessed a firearm and ammunition in November 2015. See Fed. R. Evid. 404(b) (evidence of a crime, wrong, or other act "may be admissible for . . . proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"); Buckner, 868 F.3d at 689 ("We have expressly approved the use of Rule 404(b) evidence of prior possession of a firearm to show knowledge and intent to possess at a later occasion in a felon in possession prosecution."). Moreover, the district court issued a limiting instruction, which diminished the prejudicial effect of the evidence. Id. at 690 ("[T]he presence of a limiting instruction diminishes the danger of any unfair prejudice arising from the admission of other acts." (alteration in original) (quoting United States v. Strong, 415 F.3d 902, 906 (8th Cir. 2005))). We thus conclude that the district court did not abuse its discretion in determining that the

---

[2]We deny Howard's motion to file a supplemental brief, which raises a new argument. See United States v. Owen, 854 F.3d 536, 541 n.5 (8th Cir. 2017) (explaining that issues not raised in a party's opening brief are forfeited); Fed. R. App. P. 28(c) (prohibiting the filing of post-reply briefs, except as permitted by the court).

probative value of the pawn ticket evidence outweighed any prejudice.  See Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . .").

Howard also challenges the district court's decision to admit the dash cam video of the traffic stop and the deputy's attempt to take Howard into custody.  The video showed Howard giving a false name and date of birth to the deputy, who thereafter asked Howard to exit the vehicle. As the deputy was attempting to place him in handcuffs, Howard wrested himself free from the deputy's grasp, attempted to reenter the vehicle, again broke free from the deputy, ran onto the highway, returned to his vehicle, and drove into another vehicle before speeding through a ditch, over the median, across lanes of traffic, and up an exit ramp.  "[E]vidence of flight 'is admissible and has probative value as circumstantial evidence of consciousness of guilt.'"  United States v. Thompson, 690 F.3d 977, 991 (8th Cir. 2012) (quoting United States v. Hankins, 931 F.2d 1256, 1261 (8th Cir. 1991)). Howard concedes that the evidence is "arguably relevant," but argues that the video should have been excluded as unfairly prejudicial.  Appellant's Br. 34.

The district court did not abuse its discretion in concluding that the probative value of the video was not substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403.  The video portrayed Howard's extraordinary efforts to avoid arrest, which the jury could interpret as evidence of his acute consciousness of guilt and his desire to remain on the lam. The district court instructed the jury that the government bore the burden of proving intentional flight and that flight "[a]t most, . . . may provide the basis for an inference of consciousness of guilt."  The district court then charged the jury with "determin[ing] whether or not evidence of intentional flight shows a consciousness of guilt and [determining] the weight or significance to be attached to any such evidence."  In light of the video's probative value and the court's careful instruction, we conclude that the district court did not err in admitting the video.

## C. ACCA

Howard argues that the district court erred in sentencing him as an armed career criminal. Under the ACCA, a person convicted of being a felon in possession of a firearm is subject to a mandatory minimum sentence of fifteen years if he has three prior convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). Howard concedes that he has been convicted of one qualifying offense, but disputes the determinations that his 1992 Wisconsin conviction for robbery and his 2009 North Dakota conviction for conspiracy to deliver ecstasy constitute qualifying offenses under the ACCA.

The ACCA defines "violent felony" to include any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). At the time of Howard's conviction, the Wisconsin robbery statute provided, in relevant part:

> (1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class C felony:
>
> (a) By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property; or
>
> (b) . . . .
>
> (2) Whoever violates sub. (1) by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon is guilty of a Class B felony.

Wis. Stat. § 943.32 (1991). A Class B felony was punishable by a term of imprisonment not to exceed 20 years, whereas the maximum term of imprisonment for a Class C felony was 10 years. Wis. Stat. § 939.50 (1991).

Howard argues that the Wisconsin charging document and judgment of conviction do not indicate whether he was convicted of simple robbery, as set forth in subsection (1)(a), or armed robbery, as set forth in subsection (2). See Shepard v. United States, 544 U.S. 13, 26 (2005) (inquiry into elements of the offense of conviction "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy . . . , or to some comparable judicial record"). He contends that the court thus "must presume that the conviction rested upon nothing more than the least of the acts criminalized," *i.e.*, simple robbery, which is not a violent felony. Appellant's Br. 46 (quoting United States v. Schneider, 905 F.3d 1088, 1091 (8th Cir. 2018)); see Cross v. United States, 892 F.3d 288, 297 (7th Cir. 2018) (holding that simple robbery under Wisconsin Statutes § 943.32(1) does not have as an element the use, attempted use, or threatened use of physical force against another person). Howard does not dispute the district court's conclusion that armed robbery under subsection (2) constitutes a violent felony. See United States v. Townsend, 224 F. Supp. 3d 816, 823 (D. Minn. 2016) ("Because a dangerous weapon is, by definition, one that can cause great bodily harm, Wisconsin armed robbery adds "as an element [to simple robbery] the use, attempted use or threatened use of physical force against the person of another." (alteration in original) (quoting 18 U.S.C. § 924(e)(2)(B)(i)).

We find no clear error in the district court's factual determination that Howard was convicted of armed robbery in violation of Wisconsin Statutes § 943.32(2). See United States v. Thornton, 766 F.3d 875, 878 (8th Cir. 2014) (reviewing for clear error the finding that the defendant had pleaded guilty to a statutory subsection that qualified as an ACCA predicate offense). Although the information cited only

Wisconsin Statutes § 943.32(1)(a), it charged Howard with "Armed Robbery" and alleged:

> [Howard] did and by the use or threat of use of a dangerous weapon, take property from the person of [another], the owner, by using force against the person of the owner with intent thereby to overcome the said owner's physical resistance or physical power of resistance to the taking and carrying away of said property . . . .

The charging document thus tracked the statutory language from subsections (1)(a) and (2), which is consistent with the statute's structure—that is, that a defendant commits armed robbery when he commits simple robbery by using or threatening to use a dangerous weapon. See Wis. Stat. § 943.32(2). Although the judgment cites only subsection (1)(a), it states that Howard pleaded guilty to "Armed Robbery," a Class B felony. Given that the documents refer to the crime as "Armed Robbery," that the information charged Howard with committing robbery by use and threat of use of a dangerous weapon, and that the judgment states that his conviction was a Class B felony, we reject Howard's argument that those documents failed to establish that he was convicted of armed robbery in violation of Wisconsin Statutes § 943.32(2).

Finally, Howard argues that his 2009 North Dakota conviction for conspiracy to deliver ecstasy does not constitute a "serious drug offense" under the ACCA. "We review *de novo* the district court's legal determination that a prior conviction is a predicate offense." See United States v. Vanoy, 957 F.3d 865, 867 (8th Cir. 2020).

As relevant here, the ACCA defines "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii). Relying on United States v. Franklin, 904 F.3d 793 (9th Cir. 2018), Howard argues that we must compare the elements of the state offense to the elements of the generic

-9-

federal offense to determine whether his conviction qualifies under the ACCA. Howard contends that conspiracy under federal law requires specific intent, whereas conspiracy under North Dakota law does not. He argues that because the North Dakota statute does not categorically fit within the generic federal definition of conspiracy, his conviction thereunder is not for a qualifying offense under the ACCA.

The Supreme Court recently abrogated <u>Franklin</u> and held that "[t]he 'serious drug offense' definition requires only that the state offense involve the conduct specified in the federal statute; it does not require that the state offense match certain generic offenses." <u>Shular v. United States</u>, 140 S. Ct. 779, 782 (2020); <u>see</u> <u>Vanoy</u>, 957 F.3d at 868 (holding that the defendant's "claim that the Virginia statute has a broader *mens rea* requirement than federal law fails because the categorical approach does not require them to match"). Because conspiracy to deliver ecstasy in violation of North Dakota law involves conduct of distributing a controlled substance, it categorically qualifies as a "serious drug offense." <u>See</u> <u>United States v. Boleyn</u>, 929 F.3d 932, 938 (8th Cir. 2019) (holding that regardless whether the defendants were convicted of knowingly or intentionally aiding and abetting delivery of a controlled substance, "[t]hey were convicted of conduct that 'involved' . . . drug distribution").

The judgment is affirmed.

_____

-10-