# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2536
_____

United States of America

*Plaintiff - Appellee*

v.

Teslauch K. Gatkuoth

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: February 12, 2026
Filed: June 8, 2026
_____

Before LOKEN, SMITH, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Sometimes truth *really* is stranger than fiction. Here, a routine traffic stop led to a foot chase that ended inside a stranger's house, where officers arrested Teslauch Gatkuoth and discovered a pistol under some laundry in a child's bedroom. Although he claims he was an overnight guest and that the gun did not belong to him, the evidence suggests otherwise.

## I.

A traffic stop turned into something more when officers tried to pull over a silver Lexus driven by Gatkuoth that had rolled through a stop sign. Rather than slowing down, he drove through a second one. Eventually, he stopped, jumped out, and made a run for it while clutching his waistband.

When Gatkuoth reached a nearby home, he ran directly into a bedroom. After a brief standoff, he finally surrendered. As he did, an officer heard a child's voice inside. Much to the officer's surprise, the 8-year-old child said, "[h]e put some stuff in my room, bro, I don't know what." Turns out the "stuff" included a Taurus G3 9mm handgun found underneath some clothes in a laundry hamper.

While the incident was unfolding, another resident, Riek Kuany, was calmly standing on the front porch. At first, he denied knowing Gatkuoth. The answer changed, however, during the suppression hearing on the gun. By then, Kuany was not only willing to swear he knew Gatkuoth, but that he had an open invitation to stay at the house. He was, in other words, a regular overnight guest.

For a few reasons, the district court[1] found his testimony "less than convincing." One was that no one else living at the house knew Gatkuoth despite his "purported multitude of stays at the residence." Another was Kuany's lack of information about him, even though they had allegedly known each other for years and were members of the same gang. And finally, some of his answers to basic questions seemed "rehearsed," while he "struggled" with others. After the district court denied the motion to suppress, a jury found Gatkuoth guilty of illegally possessing the firearm. *See* 18 U.S.C. § 922(g)(1).

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

## II.

In his view, the case should never have made it to a jury because the officers needed a warrant to search the child's bedroom. "Standing" to object depended on whether Gatkuoth had "a legitimate expectation of privacy" in the place searched. *United States v. Kuenstler*, 325 F.3d 1015, 1020 (8th Cir. 2003); *see United States v. Salvucci*, 448 U.S. 83, 86 (1980) (explaining that the defendant has the burden to prove Fourth Amendment standing). The district court ruled that he had none because he was a stranger to the house, not even qualifying as an overnight guest. *See Minnesota v. Olson*, 495 U.S. 91, 98 (1990) (discussing overnight guests).

Even if we assume that an overnight guest would have had a legitimate expectation of privacy in the child's bedroom—hardly a sure bet—the district court did not clearly err in finding that he never became one. *See United States v. Wiest*, 596 F.3d 906, 909 (8th Cir. 2010) (applying clear-error review to a factual finding like this one). The fate of the suppression motion rested with Kuany, but his testimony presented multiple problems, not the least of which was that he contradicted his day-of-the-chase statement about not knowing Gatkuoth. *See Mathews v. United States*, 485 U.S. 58, 65 (1988) ("Inconsistent testimony . . . seriously impairs and potentially destroys [a witness's] credibility." (citation omitted)). Add a prior conviction for filing a false police report and his unfamiliarity with someone whom he claimed was a longtime friend, and Kuany gave the court little reason to believe him. These shortcomings sunk Gatkuoth's chance at Fourth Amendment standing. *See United States v. Mosley*, 878 F.3d 246, 255 (8th Cir. 2017) (reviewing the ultimate determination on Fourth Amendment standing de novo).

## III.

With the gun admissible at trial, the government still had to connect it to him. At its core, the issue is whether there was insufficient evidence that Gatkuoth, instead of the child or someone else living in the house, "possess[ed]" it. 18 U.S.C. § 922(g)(1). Our review is "de novo, viewing the evidence in the light most

favorable to the verdict." *United States v. Burch*, 113 F.4th 815, 820 (8th Cir. 2024) (citation omitted).

To state the obvious, it seems exceedingly unlikely that anyone who lived there would have stored a 9mm pistol in an 8-year-old child's bedroom. It is unlikelier still that the location would be underneath some clothes in a laundry hamper where the child could access it. What clinched it was the child blurting out that Gatkuoth had "put some stuff in [the] room." From there, the jury could—and most likely did—infer that the reason he held his waistband during the chase was to avoid losing the gun the officers later discovered. *See United States v. Stroud*, 673 F.3d 854, 857, 861–62 (8th Cir. 2012). It also provided an explanation for why he decided to run in the first place, given that all he had done up to that point was commit a routine traffic offense. *See United States v. Howard*, 977 F.3d 671, 676 (8th Cir. 2020). Bottom line, plenty supported the verdict.

IV.

We accordingly affirm the judgment of the district court.

_____