# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————

No. 10-3637

————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Harlan M. Davis, | * | |
| | * | |
| Defendant - Appellant. | * | |

————

Submitted: October 17, 2011
Filed: February 10, 2012

————

Before RILEY, Chief Judge, LOKEN and BENTON, Circuit Judges.

————

LOKEN, Circuit Judge.

Approached by Kansas City police officers investigating a disturbance, Harlan M. Davis threw an extended-length magazine to the ground, fled to a nearby residence, threw a handgun to the ground, and escaped out a back door. The pursuing officers arrested Davis and recovered the magazine and firearm. When thrown down, the magazine was loaded with twenty-one rounds of 9-millimeter ammunition. The 9-millimeter pistol was inoperable because it had no trigger. Davis was indicted and pleaded guilty to being a felon in unlawful possession of a semi-automatic firearm in violation of 18 U.S.C. § 922(g)(1).

Davis's Presentence Investigation Report (PSR) recommended a base offense level of 22 because the offense involved a "semiautomatic firearm that is capable of accepting a large capacity magazine." U.S.S.G. § 2K2.1(a)(3)(A)(i). Davis objected on the ground that the inoperable firearm "was incapable of firing a single round let alone a magazine containing a large capacity of ammunition." At the sentencing hearing, Detective Christopher Gilio testified that the handgun was designed to expel bullets but was inoperable at the time of the offense, the gun was in "fairly good condition" and "could be fixed to fire," the magazine's capacity was thirty rounds of 9-millimeter ammunition, and "this weapon will accept that magazine." Acknowledging the issue was one of first impression, the district court[1] overruled Davis's objection and applied § 2K2.1(a)(3). The court imposed a 57-month sentence, the bottom of the advisory guidelines range.

Davis appeals the § 2K2.1(a)(3) ruling. Based on the district court's comments at sentencing, we cannot conclude that a misapplication of § 2K2.1(a)(3) would be harmless error, so we must address the issue. "We employ basic rules of statutory construction when interpreting the Guidelines." United States v. Hackman, 630 F.3d 1078, 1083 (8th Cir. 2011). Reviewing the court's interpretation of this guidelines provision *de novo* and its underlying factual findings for clear error, we affirm. United States v. Dace, 660 F.3d 1011, 1013 (8th Cir. 2011) (standard of review).

Section 2K2.1 is a lengthy guideline establishing base offense levels and specific offense enhancements for a wide variety of firearm offenses. Application Note 1 to § 2K2.1 provides, "'Firearm' has the meaning given that term in 18 U.S.C. § 921(a)(3)." That statute defines the term firearm used in the many sections of Chapter 44 of Title 18:

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

(3) The term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device.  Such term does not include an antique firearm.

Numerous cases have addressed whether the government's evidence was insufficient to prove a violation of, for example, 18 U.S.C. § 922(g), because the firearm in question was inoperable.  Like our sister circuits, we have consistently held that proof the firearm was operable is not required because the plain language of § 921(a)(3) requires only "that the 'weapon . . . is designed to . . . expel a projectile by the action of an explosive.'" United States v. York, 830 F.2d 885, 891 (8th Cir. 1987) (no firing pin), cert. denied, 484 U.S. 1074 (1988).  We have applied the same reasoning to Guidelines provisions that incorporate the § 921(a)(3) definition.  See United States v. Christmann, 193 F.3d 1023, 1024 (8th Cir. 1999) ("The definition turns on what the weapon is designed to do, not on whether it is capable of doing its job at the particular moment that the crime was committed," applying U.S.S.G. § 2B3.1), cert. denied, 529 U.S. 1044 (2000).  A different question might arise if a gun was damaged in a way that fundamentally altered its original design, "[f]or example, a gun with a barrel filled with lead, maybe for use as a theatrical prop." United States v. Rivera, 415 F.3d 284, 287 (2d Cir. 2005).  That would be a question of fact.  Cf. United States v. Mullins, 446 F.3d 750, 755-56 (8th Cir.), cert. denied, 549 U.S. 923 (2006).

On appeal, Davis concedes that his inoperable pistol was a "firearm" -- indeed, his guilty plea commanded that concession.  However, he argues, the higher base offense level in § 2K2.1(a)(3) should only apply if the "semiautomatic firearm that is capable of accepting a large capacity magazine" was operable at the time of the offense.  He bases this contention on Application Note 2 to § 2K2.1:

For purposes of subsections (a)(1), (a)(3), and (a)(4), a 'semiautomatic firearm that is capable of accepting a large capacity magazine' means a

semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm.

Davis argues that § 2K2.1(a)(3)(A)(i) does not apply because Note 2, by its plain language, requires that a firearm have "the ability to fire many rounds without reloading . . . at the time of the offense," whereas his pistol was inoperable at the time of his felon-in-possession offense.

The current version of Application Note 2 was adopted as part of a recent amendment to § 2K2.1. U.S.S.G. App. C, Amend. 691 (Nov. 2006). To put Davis's textual argument in perspective, a brief review of the complex history preceding this amendment is needed. From its inception, § 2K2.1 has imposed a greater offense level if the defendant unlawfully possessed a machine gun or another of the weapons used primarily to commit violent crimes enumerated in the federal firearm registration statutes at 26 U.S.C. § 5845(a). See U.S.S.G. App. C, Amend. 189 (Nov. 1989). In the Violent Crime Control Law Enforcement Act of 1994, Congress enacted new statutes punishing firearm offenses involving "semiautomatic assault weapons" as severely as machine gun offenses. Pub. L. No. 103-322, tit. XI, 108 Stat. 1996 (1994), codified as relevant here at 18 U.S.C. §§ 921(a)(30)-(31) (defining "semiautomatic assault weapon" and "large capacity ammunition feeding device"), and 18 U.S.C. §§ 922(v)-(w) (defining when possession of those weapons was unlawful).

After the passage of these statutes, the Sentencing Commission, as directed by Congress, adopted conforming amendments to § 2K2.1(a)(1), (a)(3), and (a)(4), assigning the same base offense levels to offenses involving unlawful possession of machine guns and semiautomatic assault weapons. See U.S.S.G. App. C, Amend. 522

(Nov. 1995). The new statutes expressly exempted "any firearm that . . . has been rendered permanently inoperable." 18 U.S.C. § 922(v)(3). A revised Application Note 3 to § 2K2.1 incorporated this exemption: "A 'firearm described in 18 U.S.C. § 921(a)(30)' (pertaining to semiautomatic assault weapon) does not include a weapon exempted under the provisions of 18 U.S.C. § 922(v)(3)." U.S.S.G. App. C, Amend. 522 (Nov. 1995). Following the Commission's lead, we construed the revised § 2K2.1(a)(3) as applying to the possession of an inoperable semiautomatic assault weapon unless the weapon was "permanently inoperable." United States v. Piggie, 316 F.3d 789, 792-93 (8th Cir.), cert. denied, 540 U.S. 857 (2003).

The issue in this appeal arose because the ten-year statutory ban on semiautomatic assault weapons reflected in 18 U.S.C. §§ 921(a)(30) and 922(v) expired on September 13, 2004. See United States v. Barron, 557 F.3d 866, 870 (8th Cir. 2009) (concluding former § 2K2.1(a)(4) survived repeal of § 921(a)(30) because "enhanced punishment [under the Guidelines] for prohibited persons who possess [semiautomatic assault weapons] does not conflict with any statute"). The Commission concluded that it needed to amend § 2K2.1(a) and the Application Notes because Congress had repealed the cross-referenced statutes. Accordingly, the Commission replaced the cross-reference to 18 U.S.C. § 921(a)(30) in § 2K2.1(a)(1), (a)(3), and (a)(4) with the term, "semiautomatic firearm that is capable of accepting a large capacity magazine," and defined that term in the above-quoted Application Note 2, omitting the prior cross-reference to the "permanently inoperable" provision in now-repealed 18 U.S.C. § 922(v)(3). In stating its reason for this amendment to Note 2, the Commission gave no hint that it intended any substantive change regarding inoperable firearms and no explanation of the language adopted:

> The amendment deletes the reference to 18 U.S.C. § 921(a)(30) at § 2K2.1(a)(1), (a)(3), and (a)(4) and replaces the reference with the term, 'a semiautomatic firearm capable of accepting a large capacity magazine,' which is defined in Application Note 2.

U.S.S.G. App. C, Amend. 691 (Nov. 2006).

Putting aside Davis's textual argument for the moment, we see no basis in the history of the amended § 2K2.1(a)(3)(A)(i) for concluding that this base offense level, unlike all other firearm statutes and guideline provisions, does not apply unless the "semiautomatic firearm that is capable of accepting a large capacity magazine" was operable at the time of the offense. If the Commission had not defined this term in Application Note 2, it would clearly be construed, in light of the above-referenced statutes and judicial decisions, to mean a semiautomatic weapon *designed to be* capable of accepting a large capacity magazine.

Turning to Davis's textual argument, like the district court we decline to read the plain language of Application Note 2 as requiring a different interpretation of § 2K2.1(a)(3)(A)(i). The term "firearm" in Application Notes 1 and 2 must be given the same meaning, that is, the definition in 18 U.S.C. § 921(a)(3) which includes the many judicial decisions that have applied the definition to less-than-permanently-inoperable weapons. See United States v. Kowal, 527 F.3d 741, 746-47 (8th Cir.), cert. denied, 555 U.S. 1038 (2008) ("When two statutory provisions employ the same word in close proximity, the 'normal rule . . . that identical words used in different parts of the same act are intended to have the same meaning carries' even greater weight."). Moreover, the phrase, "because at the time of the offense," comes immediately before the condition that the large capacity magazine must be either (A) attached, or (B) in close proximity to, the semiautomatic firearm. This strongly suggests that the phrase was not intended to modify an earlier condition -- that the firearm "has the ability to fire many rounds without reloading."

Read consistently with the history of § 2K2.1, as well as its text, Application Note 2 clarifies that § 2K2.1(a)(3)(A)(i) required proof of "physical proximity between the high-capacity magazine and the firearm" that police found in Davis's unlawful possession. United States v. Curruth, 439 Fed. Appx. 560, 562 (8th Cir.

2011) (unpublished). But it does not affect the applicability of § 2K2.1(a) to inoperable firearms, except perhaps in the unusual case where attaching the large capacity magazine rendered or would render the semiautomatic firearm inoperable. Here, by contrast, the government proved both that the semiautomatic firearm "could be fixed to fire," and that "this weapon will accept that magazine."

The judgment of district court is affirmed.

———————————————