In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2945

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEVEN DOTSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:11-cr-00056-WTL-KPF-1—**William T. Lawrence**, *Judge.*

ARGUED MARCH 5, 2013—DECIDED APRIL 4, 2013

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant, arrested after reportedly having assaulted a woman and pointed a pistol at her, was prosecuted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He was found guilty in a bench trial and sentenced to 188 months in prison. The only question presented by his appeal is whether the pistol was a firearm, defined (so far as bears on this case) as "any weapon (including a starter gun) which will or is designed to or may readily

be converted to expel a projectile by the action of an explosive," or "the frame or receiver of any such weapon." §§ 921(a)(3)(A), (B). The pistol is a Hi-Point .380 caliber semi-automatic. It was certainly designed to be a gun, and nothing else. But according to the pretrial report of an expert at the Justice Department's Bureau of Alcohol, Tobacco, Firearms and Explosives, at the time when the defendant possessed the gun it was inoperable because of "significant damage, missing/broken parts, and extensive corrosion." The expert testified similarly at trial—testified that the gun was "damage[d]" and had "corroded, missing and broken components which make it inoperable."

The government has conceded that because of this damage the gun could not "expel a projectile" at the time the defendant possessed it and could not have been "readily . . . converted" to be able to do so, either. To restore the gun to firing condition would require that it be disassembled and cleaned and the corroded and missing parts replaced. All this would take an hour or two for an expert in gun repair. It would take a novice longer—if he could do it at all. The question for us is whether nevertheless the defendant's gun "is designed" to expel a projectile by means of an explosive. The district judge found that it is.

There are two extreme positions regarding the meaning of "is designed" in the statute. One, asserted by the defendant, is that a gun that is seriously inoperable—that would require expertise in gun repair to restore to operating condition—*no longer* is a "weapon"

that "is designed . . . to expel a projectile by the action of an explosive." It would be so "designed" if its "characteristics" had remained the same, but the severe damage that it has sustained has changed those characteristics and therefore the design. The opposite position, which the government doesn't quite espouse but doesn't disclaim either, is once a gun always a gun: anything originally designed as a gun remains a gun no matter how dilapidated it becomes, how difficult to restore to operating condition—or even impossible.

Neither extreme is plausible. A gun is still a gun—a weapon designed to expel a projectile by means of explosive action—even though it is in bad condition and can be restored to working condition only by a gunsmith. See *United States v. Rivera*, 415 F.3d 284, 286 (2d Cir. 2005); *United States v. Yannott*, 42 F.3d 999, 1006 (6th Cir. 1994); cf. *United States v. TRW Rifle 7.62x51mm Caliber, One Model 14 Serial 593006*, 447 F.3d 686, 692 (9th Cir. 2006). The defendant confuses "design" with "object" when he says in his brief that "the design [of his gun] has been so altered that the original purpose for which it was intended no longer exists." The object has been altered, but not the design. The change in the gun resulting from the damage to it was, so far as appears, unintentional; it was not the consequence of a redesign. The brief is wrong when it says that because "the gun was prevented from performing as it was originally designed to do," its design has been altered. An airplane is designed to fly; a defect in manufacture or maintenance that prevents it from flying does not alter its design.

The defendant might but does not argue that the gun was "redesigned" to be a weapon only of "intimidation," which is how he used it in the alleged assault. But there is no evidence of a conscious design to make the gun inoperable so that it could be used *only* to intimidate. Notice that the statutory definition doesn't require that the felon possessing a gun have ammunition or access to ammunition, though such absence renders the gun inoperable except as a club or an intimidator.

But what if the gun is so damaged that it can't be restored? What if it's just a heap of twisted metal barely even recognizable as having once been a gun? No longer useful for any purpose, even intimidation, although no one had redesigned it to be something other than a gun, such a piece of junk would not be a "weapon" within the meaning of section 921, because, being incapable of repair, it could never again harm anyone, except maybe as a club. But almost any solid object can be used as a club, yet we don't call all solid objects weapons.

Or suppose that what was once a gun has been converted to a nonweapon, a cigarette lighter for example. Concretely, what if—

### PIETRO BERETTA U.S. 9MM M9 CHROME PISTOL LIGHTER, TOP POPULAR MEN'S GIFT



was once a real Beretta (it wasn't), but all its innards have been removed and if you pull the trigger all that happens is that the muzzle emits a tiny flame. Would a felon who possessed such a lighter be a felon in possession of a firearm? Maybe he would be if what the statute asked is whether the alleged weapon "was designed . . . to expel," but it doesn't; it says "is designed." That implies the possibility of redesign. In our example the gun lighter was originally designed to be a gun but

later it was redesigned to be a cigarette lighter. We doubt that the statutory definition would fit that case, see *United States v. Rivera*, *supra*, 415 F.3d at 287; *United States v. Reed*, 114 F.3d 1053, 1058-59 (10th Cir. 1997) (dissenting opinion); *United States v. Wada*, 323 F. Supp. 2d 1079 (D. Or. 2004), although a complication is that the statutory definition of "firearm" includes—remember—"the frame or receiver of any such weapon." The frame or receiver (these are synonyms) is the housing of the gun, which contains the magazine and the trigger assembly—the operating parts. The gun lighter might be the frame of a real gun, although we're inclined to think that it would not be the frame of a "weapon" that was "designed" to shoot and so would fall outside the statutory definition of a frame as a firearm.

The government would be poorly served by the "once a gun, always a gun" interpretation of "is designed" that it flirts with—an interpretation that would read "is designed" to mean "was originally designed." For toy guns are not infrequently redesigned to be real guns, Daniel Macht, "Man Converts Super Soaker Squirt Gun into Shotgun," *NBCNews*, May 23, 2012, http://usnews. nbcnews.com/_news/2012/05/23/11834176-man-converts-super-soaker-squirt-gun-into-shotgun (visited March 29, 2013); Diane Macedo, "Toy Gun Sold in U.S. Can Easily Be Converted to the Real Thing*," Fox News*, May 14, 2010, www.foxnews.com/us/2010/05/06/exclusive-toy-gun-sold-easily-turned-real-thing (visited March 29, 2013), and surely the government doesn't think that a felon who owns a gun that started life as a toy gun but now shoots real bullets can't be convicted of being a felon in posses-

sion. The gun in this case, although in bad condition, neither was redesigned to be something other than a gun nor is so badly damaged that it can no longer be regarded as a weapon designed to fire bullets. And just as a very ill person can look entirely normal on the outside, the outward appearance of the defendant's gun is normal. Designed to be a gun, never redesigned to be something else, not so dilapidated as to be beyond repair, the gun fits the statutory definition and the judgment must therefore be

AFFIRMED.