# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3139

_____

United States of America

*Plaintiff - Appellee*

v.

Trevon Sykes

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 25, 2015
Filed: December 21, 2016

_____

Before LOKEN, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Trevon Sykes pled guilty to being a felon in possession of numerous firearms in violation of 18 U.S.C. § 922(g)(1). Finding that Sykes had committed three predicate offenses qualifying as violent felonies under the Armed Career Criminal

Act ("ACCA"), 18 U.S.C. § 924(e), the district court[1] sentenced Sykes to 180 months in prison and a three-year term of supervised release. Sykes appealed his sentence, raising issues related to the nature of his predicate offenses coupled with his age at the time of the commission of these offenses. We affirmed.

The United States Supreme Court granted Sykes's petition for writ of certiorari, vacated the judgment, and remanded the case for further consideration in light of its decision in Mathis v. United States, 136 S. Ct. 2243 (2016). In Mathis, the Court held "when a statute, instead of merely laying out a crime's elements, lists alternative means of fulfilling one (or more)" elements, the sentencing court commits error by "applying the modified categorical approach to determine the means by which [the defendant] committed his prior crimes" in order to determine whether the ACCA enhancement applies. Id. at 2253. After following the Supreme Court's directive, we again affirm Sykes's sentence.

I.

On May 23, 2013, Sykes and Charles Sacus arrived at a tattoo parlor in St. Louis, Missouri. Unbeknownst to Sykes and Sacus, the proprietors of the tattoo parlor were undercover agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). As a cover, the agents posed as convicted felons who were buying guns for unlawful use by an outlaw motorcycle gang. While at the tattoo parlor, Sykes handed a Hi-Point .45 caliber semi-automatic pistol to Sacus, which Sacus sold to the undercover agents for $500. Sykes admitted to the undercover agents that he had recently been released from prison, the pistol belonged to him, and he had more guns for sale.

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

Over the following weeks, Sykes sold five firearms, two of which were stolen, to the undercover agents. All of the transactions were recorded with audio and video. ATF experts examined the firearms and determined that they functioned as designed and were manufactured outside the state of Missouri.

A federal grand jury indicted Sykes for being a felon in possession of numerous firearms from May 23, 2013 to June 6, 2013, in violation of 18 U.S.C § 922(g)(1). Sykes entered a plea agreement and pled guilty. The United States Probation Office issued a presentence investigation report ("PSR"), which stated that Sykes had three prior convictions that were crimes of violence and violent felonies. Specifically, certified court records established that Sykes previously was convicted of: (1) two counts of second-degree burglary by knowingly and unlawfully entering a building in St. Louis County in 2010; (2) second-degree burglary by knowingly and unlawfully entering a building and felony stealing in St. Louis County in 2010; (3) three counts of possession of a controlled substance in St. Louis County in 2010; and (4) first-degree burglary in St. Louis City in 2010. Each of these prior convictions is a felony punishable by a term of imprisonment exceeding one year. As a result of Sykes having three violent felony convictions and one serious drug offense, the PSR classified him as an Armed Career Criminal subject to a mandatory minimum sentence of 180 months pursuant to the ACCA.

Sykes objected to his classification as an Armed Career Criminal, asserting that because the second-degree burglaries were of unoccupied commercial buildings and were nonviolent, and in view of his youth at the time of the commission of the burglaries, the offenses should not count as predicate convictions under the ACCA. The district court rejected these arguments, noting that Sykes was certified as an adult for each of his prior convictions and the two offenses to which Sykes objected qualified as violent felonies under Eighth Circuit law.

## II.

On appeal, Sykes first argues that his two prior convictions for second-degree burglary do not qualify as violent felonies for the purposes of § 924(e) because the Missouri second-degree burglary statute is overbroad and Sykes burgled unoccupied commercial buildings. Second, Sykes asserts that he incurred the prior convictions when he was under the age of 18, and therefore using them to enhance his sentence to a mandatary minimum of fifteen years constitutes cruel and unusual punishment under the Eighth Amendment. We address each argument in turn.

## A.

First, Sykes contends that the district court erred in finding that his prior second-degree burglary convictions qualify as violent felonies for purposes of § 924(e) because the second-degree burglary statute is overbroad and Sykes burgled unoccupied commercial buildings. We review *de novo* whether a prior conviction constitutes a violent felony for the purposes of § 924(e). United States v. Boaz, 558 F.3d 800, 806 (8th Cir. 2009) (citing United States v. Comstock, 531 F.3d 667, 679 (8th Cir. 2008)).

To determine whether a past conviction qualifies as a violent felony, we apply the "categorical approach," under which we "look only to the fact of conviction and the statutory definition of the prior offense." Taylor v. United States, 495 U.S. 575, 602 (1990). If the statute of conviction lists elements in the alternative, the sentencing court may apply the "modified categorical approach," under which "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." Mathis, 136 S. Ct. at 2249 (citing Taylor, 495 U.S. at 602).

Burglary is one of the enumerated offenses under § 924(e)(2)(B)(ii). An offense constitutes "burglary" under § 924(e) if it contains the elements of "generic burglary," which is defined as "unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Taylor, 495 U.S. at 598. Any enhanced sentence under § 924(e) for a prior burglary conviction must "rest on a showing that [the] prior conviction 'necessarily' involved . . . facts equating to generic burglary." Shepard v. United States, 544 U.S. 13, 24 (2005).

Under Missouri law, a person commits second-degree burglary when "he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." Mo. Ann. Stat. § 569.170. Sykes argues that the statute's definition of an "inhabitable structure" is overbroad because it includes a "ship, trailer, sleeping car, airplane, or other vehicle or structure." Id. § 569.010(2). However, the statute contains at least two alternative elements: burglary "of a building" and burglary of "an inhabitable structure," separated in the text by the disjunctive "or." See Mathis, 136 S. Ct. at 2248 ("'Elements' are the 'constituent parts' of a crime's legal definition—the things the prosecution must prove to sustain a conviction.") (internal quotation marks omitted). Sykes has three Missouri state court convictions for second-degree burglary of a "building." At Sykes's sentencing, the government introduced state court records of these convictions which included the indictments. Id. at 2249 (courts employing the "modified categorical approach" may look to "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, [Sykes] was convicted of."). Sykes does not dispute the fact of these convictions. Second-degree burglary of a building conforms to the elements of a generic burglary promulgated in Taylor: (i) unlawful entry or remaining in (ii) a building or structure (iii) with the intent to commit a crime. See Taylor, 495 U.S. at 598. Further, because burglary of "a building" describes an element of second-degree burglary rather than a means, our decision does not run afoul of Mathis. 136 S. Ct. at 2253.

Sykes also argues that his prior second-degree burglary convictions are not violent felonies for purposes of the ACCA because they were of unoccupied commercial buildings and did not pose "a serious potential risk of physical injury to another." Sykes draws on the language of the residual clause of § 924(e)(2)(B)(ii). In the time since Sykes first briefed his arguments, the Supreme Court has held that imposing an increased sentence under the residual clause of § 924(e) is unconstitutional. Johnson v. United States, 135 S. Ct. 2551, 2563 (2015). Nevertheless, the Court noted that its "decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." Id. Therefore, because burglary is an enumerated offense under § 924(e)(2)(B)(ii), the imposition of an increased sentence need not rest on whether Sykes's conduct posed "a serious potential risk of physical injury to another." Indeed, the Supreme Court has rejected the notion that "Congress meant to include as predicate offenses only a subclass of burglaries whose elements include 'conduct that presents a serious risk of physical injury to another,' over and above the risk inherent in ordinary burglaries." Taylor, 495 U.S. at 597. "[I]f this were Congress' intent, there would have been no reason to add the word 'burglary' to § 924(e)(2)(B)(ii), since that provision already includes *any* crime that 'involves conduct that presents a serious potential risk of physical injury to another.'" Id. The Court reasoned that Congress most likely thought that certain categories of property crimes typically present a risk of injury to persons and are "so often committed by career criminals" that they should be enumerated in the enhancement statute. Id.

Accordingly, we conclude that Sykes's prior second-degree burglary convictions fit within the generic definition of "burglary" for purposes of the ACCA, and each constitutes a violent felony under § 924(e).

B.

Second, Sykes contends that the sentence enhancement constitutes cruel and unusual punishment under the Eighth Amendment because he was a juvenile when he incurred the prior convictions. We review constitutional challenges to a sentence *de novo*. United States v. Bowers, 638 F.3d 616, 620 (8th Cir. 2011).

Sykes cites the Supreme Court's decisions in Roper v. Simmons, 543 U.S. 551 (2005), and Graham v. Florida, 560 U.S. 48 (2010), in support of his contention. We have rejected the argument that in light of Roper, "application of the ACCA enhancement to [a] sentence violates the Eighth Amendment because it results in a sentence increase based on crimes committed . . . as a juvenile." See United States v. Jones, 574 F.3d 546, 553 (8th Cir. 2009). "Roper does not deal specifically—or even tangentially—with sentence enhancement. It is one thing to prohibit capital punishment for those under the age of eighteen, but an entirely different thing to prohibit consideration of prior youthful offenses when sentencing criminals who continue their illegal activity into adulthood." Id. (internal quotation marks omitted). Likewise, Graham does not remotely concern sentence enhancement under the ACCA for crimes committed as a juvenile. Graham held that the Eighth Amendment "prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." 560 U.S. at 82. Sykes is not facing a life sentence, but a fifteen-year sentence under § 924(e). Neither Roper nor Graham prohibits sentence enhancement based on convictions incurred as a juvenile.

Furthermore, we have held that "the Eighth Amendment does not prohibit using an adult conviction based on juvenile conduct to increase a sentence under the ACCA." Jones, 574 F.3d at 553. Sykes was certified as an adult for each of his prior second-degree burglary convictions. Accordingly, Sykes's sentence enhancement under § 924(e) for crimes he committed as a juvenile does not violate the Eighth Amendment, and the district court did not err in enhancing Sykes's sentence.

-7-

## III.

We hold that the district court properly classified each of Sykes's Missouri second-degree burglary convictions as a violent felony for the purpose of enhancing his federal sentence pursuant to the ACCA. Accordingly, we affirm Sykes's sentence.

_____