# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1616

_____

United States of America

*Plaintiff - Appellee*

v.

Keith R. Hardin

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 15, 2017
Filed: May 11, 2018

_____

Before COLLOTON and GRUENDER, Circuit Judges, and HOLMES,[1] District
Judge.

_____

GRUENDER, Circuit Judge.

Keith Hardin was convicted by a jury of being a felon in possession of a
firearm, in violation of 18 U.S.C. § 922(g)(1).  The district court later determined that

_____

[1]The Honorable P.K. Holmes, III, Chief Judge, United States District Court for
the Western District of Arkansas, sitting by designation.

he qualified for an enhanced sentence under the Armed Career Criminal Act ("ACCA") on account of his prior Missouri felony convictions. *See id.* § 924(e)(1). Hardin now appeals his conviction, arguing that the district court improperly excluded evidence concerning the firearm's operability and erred in denying his motion for judgment of acquittal. He also challenges his sentence, claiming that at least some of his prior convictions do not qualify as violent felonies under the ACCA. We affirm Hardin's conviction, but in light of intervening circuit precedent, we vacate his sentence and remand for resentencing.

**I.**

In the early morning hours of January 15, 2016, two officers with the Kansas City Police Department ("KCPD") observed Hardin walking in the street. The officers decided to stop him because he was violating a city ordinance that required pedestrians to use sidewalks where possible. After a brief exchange, the officers asked Hardin for identification, which he provided. They then discovered that he was the subject of an arrest warrant. When the officers told Hardin they were placing him under arrest, he informed them, "I have a .380 on my left hip." The officers seized a firearm loaded with six rounds of live ammunition. Subsequent forensic analysis identified the firearm as a .380 Cobra handgun. However, the weapon was determined to be inoperable "due to a broken trigger and numerous missing parts."

Hardin was later indicted for being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). Before trial, the Government filed a motion *in limine* requesting the exclusion of evidence concerning the gun's operability. The Government argued that, because the .380 Cobra met the federal definition of a firearm as a weapon "designed to . . . expel a projectile by the action of an explosive," *see id.* § 921(a)(3), the gun's inability to fire was irrelevant and "would likely confuse and mislead the jury." The district court granted this motion. However, citing our decision in *United States v. Counce*, it also noted that the operability of a weapon could be relevant to its

design. *See* 445 F.3d 1016, 1018 (8th Cir. 2016) (per curiam). Therefore, the court left open the possibility of admitting operability evidence if Hardin first presented an appropriate basis for doing so outside the presence of the jury.

At the conclusion of the Government's case and again at the close of evidence, Hardin moved for acquittal. The district court denied both motions after concluding that Hardin had admitted to all three elements of the felon-in-possession offense: (1) a previous felony conviction and (2) knowing possession of a firearm (3) that was in or affecting interstate commerce. *See United States v. Garcia-Hernandez*, 803 F.3d 994, 996 (8th Cir. 2015). Prior to trial, Hardin stipulated to the first and third elements. As for the second element, Hardin's trial counsel conceded multiple times that the gun was originally designed to expel a projectile, although she insisted that it "was so damaged that it no longer fit . . . the original design of the manufacturer." She also admitted in her opening statement that Hardin had possessed "what he thought was okay to carry, a firearm." On this basis, the court found that the second element had been conceded. Therefore, the court allowed the case to proceed to the jury, which found Hardin guilty of being a felon in possession of a firearm.

Hardin's presentence investigation report ("PSR") concluded that he was subject to an enhanced sentence as an armed career criminal because he had at least three prior convictions for violent felonies. *See* 18 U.S.C. § 924(e)(1). While the PSR did not specify which of Hardin's convictions qualified as predicate offenses, it detailed his criminal history, which included Missouri convictions for first-degree robbery, second-degree burglary, forcible sodomy, and armed criminal action. The resulting guidelines range was 188 to 235 months' imprisonment. Hardin's only objection to the PSR was that it incorrectly classified him as an armed career criminal. At the sentencing hearing, the district court overruled this objection, adopted the PSR's guidelines-range calculation, and sentenced him to 235 months. Hardin now appeals both his conviction and his sentence.

## II.

We begin with Hardin's two challenges to his conviction, both of which relate to whether the .380 Cobra qualified as a firearm for purposes of the federal felon-in-possession statute. "To obtain a conviction under 18 U.S.C. § 922(g), the government must prove that an object satisfies the federal definition of a firearm." *Counce*, 445 F.3d at 1018. This definition includes "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3). Citing the disrepair of his gun, Hardin argues that he should have been allowed to offer operability evidence as part of his defense and that he should have been acquitted because the Government failed prove that the gun qualified as a firearm under the federal definition.

## A.

Hardin first argues that the district court improperly excluded evidence concerning the operability of the .380 Cobra. Specifically, the court precluded him from: (1) eliciting testimony from the KCPD forensic specialist who determined that the gun "did not function due to a broken trigger and numerous missing internal parts"; (2) cross-examining officers regarding the condition of the gun; and (3) testifying as to his own belief that he could carry the weapon despite his status as a felon because it was inoperable. Under the Federal Rules of Evidence, a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. "We review the district court's decision to exclude evidence for an abuse of discretion."[2] *Counce*, 445 F.3d at 1018.

_____

[2]Although Hardin acknowledges that we generally review such determinations for an abuse of discretion, he insists that the exclusion of operability evidence here implicated his Fifth and Sixth Amendment rights and therefore must be reviewed *de novo*. Even assuming he is correct, the application of a more stringent standard of review does not affect our conclusion in this case.

As we have recognized previously, "the operation of a weapon may be relevant to whether it is designed to expel a projectile by the action of an explosive." *Id.* That is, a gun may not qualify under the federal definition if it is "damaged in a way that fundamentally altered its original design." *United States v. Davis*, 668 F.3d 576, 577 (8th Cir. 2012). However, Hardin cites no cases in which a gun has been disqualified under this standard, and all four cases on which he relies actually indicate that broken pieces and missing parts are not enough to constitute a fundamental alteration in design. *See id.* at 576-77 (upholding an enhanced sentence involving a "semiautomatic firearm that is capable of accepting a large capacity magazine" where the gun had no trigger); *Counce*, 445 F.3d at 1018-19 (finding that evidence of a missing safety and the resulting inability of a gun to fire was properly excluded because it would have resulted in substantial juror confusion without having significant probative value as to the weapon's design); *United States v. Dotson*, 712 F.3d 369, 370, 372 (7th Cir. 2013) (determining that a pistol qualified as a firearm under § 921(a)(3) despite "significant damage, missing/broken parts, and extensive corrosion"); *United States v. Rivera*, 415 F.3d 284, 286-87 (2d Cir. 2005) (concluding that a broken firing pin and flattened firing-pin chamber did not change the design of a pistol and explaining that, "[w]here a weapon designed to fire a projectile is rendered inoperable, whether on purpose or by accident, it is not removed from the statute's purview; although it is temporarily incapable of effecting its purpose, it continues to be 'designed' to fire a projectile"). In other words, "[a] gun is still a gun . . . even though it is in bad condition," *see Dotson*, 712 F.3d at 370, and we require something more to find a fundamental alteration in design—"for example, a gun with a barrel filled with lead . . . for use as a theatrical prop," *Davis*, 668 F.3d at 577, or a Beretta redesigned to be a cigarette lighter, *see Dotson*, 712 F.3d at 371-72.

Hardin does not suggest that the condition of his .380 Cobra somehow makes this case factually distinguishable from the above precedent. Instead, he claims that the district court improperly excluded evidence under the theory that "what was once a gun, is *always* a gun." However, even a cursory reading of the order granting the

-5-

Government's motion *in limine* belies this argument. The district court did not issue a blanket prohibition on operability evidence. Rather, it explicitly recognized that such evidence "may be relevant to its design" and, accordingly, left the door open for Hardin to show that his proffered evidence would be relevant for that purpose. Given that Hardin never suggested that he had the type of evidence that could show that the .380 Cobra had been "fundamentally altered," *see Davis*, 668 F.3d at 577, there was no basis for concluding that the pistol had changed from what Hardin conceded it was originally manufactured to be: "a gun, a weapon, for use to expel projectiles." Therefore, we conclude the operability evidence "was properly excluded under Rule 403 because [it] would have yielded substantial juror confusion without having significant probative value regarding the issue of weapon design."[3] *See Counce*, 445 F.3d at 1019.

B.

Hardin also argues that the district court erred in denying his motion for judgment of acquittal because the Government failed to prove that the .380 Cobra qualified under the federal definition of a firearm despite its missing pieces and broken parts. Under Federal Rule of Criminal Procedure 29(a), a district court must grant a defendant's motion for judgment of acquittal where the evidence is insufficient to sustain a conviction. "We review the denial of a motion for judgment of acquittal *de novo*, viewing the evidence in the light most favorable to the jury's verdict." *United States v. Nshanian*, 821 F.3d 1013, 1017 (8th Cir. 2016). "We will direct a judgment of acquittal only when no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.*

---

[3]Hardin's trial counsel argued that the operability evidence was also relevant to his belief that it was not unlawful to carry a broken gun. Hardin does not appear to make this argument on appeal, but even if he did, our caselaw precludes this interpretation of "knowing" possession. *See Garcia-Hernandez*, 803 F.3d at 997 (discussing relevant cases and rejecting this reading of § 922(g)(1)).

"Like our sister circuits, we have consistently held that proof the firearm was operable is not required because the plain language of § 921(a)(3) requires only that the weapon . . . is designed to . . . expel a projectile by the action of an explosive." *Davis*, 668 F.3d at 577 (internal quotation marks omitted). Although it may be necessary for the Government to adduce additional evidence where a defendant calls into question whether a gun has been "fundamentally altered," *see id.*, Hardin did not do so here for the reasons discussed above. Moreover, "numerous courts have held that, without a firearm in evidence and without expert opinions based on analysis of the firearm, lay testimony from eyewitnesses can be sufficient to support a finding that an object is, in fact, a firearm under § 921(a)(3)(A)." *United States v. Dobbs*, 449 F.3d 904, 910-11 (8th Cir. 2006). Here, the Government admitted Hardin's .380 Cobra into evidence, three officers testified that they seized this weapon from him, and Hardin's own counsel conceded that he knowingly possessed an inoperable firearm. Thus, there was sufficient evidence to prove the second element of the felon-in-possession offense. Given that he also stipulated to the other two elements, the district court did not err in denying his motion for judgment of acquittal.

## III.

Hardin's final assertion of error concerns the district court's determination that he qualified for an enhanced sentence as an armed career criminal. The ACCA establishes a minimum term of fifteen years' imprisonment for unlawful possession of a firearm by a felon who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e). Because Hardin's convictions for forcible sodomy and armed criminal action stemmed from a single incident, the Government concedes that his robbery and burglary convictions must both qualify as violent felonies for him to be an armed career criminal. After oral argument, an *en banc* panel of this court determined that the version of Missouri second-degree burglary under which Hardin was convicted no longer qualifies as a violent felony. *See United States v. Naylor*,

887 F.3d 397, 399 (8th Cir. 2018) (en banc) (lead opinion) (overruling *United States v. Sykes*, 844 F.3d 712 (8th Cir. 2016)); *id.* at 408 (Colloton, J., concurring in the judgment).  Because of this decision and the Government's concession, we conclude that Hardin no longer qualifies for the ACCA enhancement and vacate his sentence.

## IV.

Accordingly, we affirm Hardin's conviction, but we vacate his sentence and remand for resentencing in light of our decision in *United States v. Naylor*.

_____