# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 20, 2023

Lyle W. Cayce
Clerk

No. 22-50360

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JACOB LYON,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:21-CR-637-2

Before JONES, BARKSDALE, and ELROD, *Circuit Judges*.

PER CURIAM: *

Jacob Lyon was found guilty of possessing firearms as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced him

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 22-50360

to 120 months' imprisonment, the statutory maximum.  On appeal, Lyon challenges his conviction and the length of his sentence.  We AFFIRM.

**I.**

Lyon was under investigation for his possible involvement in a shooting in Texas when law enforcement discovered the two firearms in question.  During the investigation, Asher Schuler, a special agent with the Bureau of Alcohol Tobacco, Firearms, and Explosives, along with local law enforcement, traveled to the trailer home of Lyon's common-law wife and mother of his two children.  In the trailer home, Agent Schuler found a pistol, an AR-15 rifle, an AR-15 rifle magazine, and ammunition, along with some methamphetamine and marijuana.  In addition, Agent Schuler found mail and medical insurance documents addressed to Lyon at the trailer's address, which was also the address listed on Lyon's driver's license.  In an interview at the police station, Lyon confirmed that he lived in the trailer.

At trial, Agent Schuler testified that he found the pistol in a half-opened drawer of a small plastic set of drawers that was in use as a nightstand beside the bed.  Also in the bedroom, he found the mail addressed to Lyon, some ammunition, men's and women's clothing, a baby's crib, and a rear sight for the rifle.

Agent Schuler found the rifle in a kitchen broom closet, which contained very little else except the gun, and which was easily accessible to anyone in the trailer.  Also in the kitchen he found a "safe" or lock box containing more ammunition, the methamphetamine, and the marijuana.

Agent Schuler was unclear in his testimony where exactly he found the rifle magazine.  On direct examination, he stated that he found the rifle magazine in the safe in the kitchen.  But on cross-examination, he stated that he "believe[d]" he found the rifle magazine in the bedroom.  The government, in response to Lyon's objections in the Presentence

Investigation Report, stated that Agent Schuler found two rifle magazines in the trailer: one in the bedroom and one in the kitchen. But the government's forfeiture report lists only one magazine for a rifle, in addition to one pistol magazine.

## II.

Lyon argues that the evidence was insufficient to show that he constructively possessed the firearms, because there was no evidence he knew they were there. Lyon preserved the sufficiency issue by moving for a judgment of acquittal at the close of the Government's case. *See* Fed. R. Crim. P. 29(a). Thus, this court reviews the sufficiency of the evidence de novo. *United States v. Fields*, 977 F.3d 358, 363 (5th Cir. 2020). The court "view[s] the evidence and the inferences drawn therefrom in the light most favorable to the verdict," and "determine[s] whether a rational jury could have found the defendant guilty beyond a reasonable doubt." *Id.* (quoting *United States v. Michell*, 484 F.3d 762, 768 (5th Cir. 2007)). The jury is "free to choose among reasonable interpretations of the evidence." *Id.* (quoting *United States v. Pennington*, 20 F.3d 593, 597 (5th Cir. 1994)).

A defendant constructively possesses a firearm if he has "dominion or control over the premises in which the item is found." *United States v. Meza*, 701 F.3d 411, 419 (5th Cir. 2012) (citation omitted). When the firearm is found in a residence jointly occupied by the defendant and another person, some "circumstantial indicium of possession ... besides mere joint occupancy" is required. *United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir. 1993). The government must introduce "some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the illegal item." *Meza*, 701 F.3d at 419 (quoting *United States v. Hinojosa*, 349 F.3d 200, 204 (5th Cir. 2003)). Determining whether constructive possession exists "'is not a scientific inquiry,' and the court must 'employ a

common sense, fact-specific approach.'" *Id.* (quoting *United States v. Wright*, 24 F.3d 732, 735 (5th Cir. 1994)).

As the facts stated above show, the firearms, magazines, and ammunition were readily accessible and not hidden in the trailer home. Along with the firearms, there was ample evidence that Lyon inhabited the home along with his common-law wife:  his bills, his medical insurance documents, his driver's license, the statements by law enforcement, and his own admission all confirmed that the trailer was his current home.  Thus, this case is similar to *Meza* and *Huntsberry*, in which this court has held the evidence sufficient to support a finding of constructive possession.  *See Meza*, 701 F.3d at 421 (holding that the evidence of constructive possession was sufficient because the weapon was "not hidden but rather was found in plain view on top of a washing machine in [the defendant's] shed," and it was "loaded with ammunition from a box found inside [the defendant's] bedroom"); *United States v. Huntsberry*, 956 F.3d 270, 280 (5th Cir. 2020) (holding that the evidence of constructive possession was sufficient because the weapons were in "what appeared to be the master bedroom closet in the trailer [the defendant] occupied for many years").  Here, as in those two cases, there is sufficient evidence to justify a plausible inference by the jury that Lyon constructively possessed the firearms.

In *United States v. Mergerson*, by contrast, there was no constructive possession, because the documentary evidence showed that the defendant's girlfriend had purchased the handgun in question, and it was stored out of sight under a mattress.  4 F.3d at 348.  Here, in distinction to *Mergerson*, the jury was entitled to discredit the unsubstantiated testimony from Lyon's common-law wife that she purchased the firearms in the trailer home.

Lyon's arguments, raised in the reply brief for the first time, concerning evidence either excluded or admitted by the district court miss

the mark.  Arguments raised initially in a reply brief are waived.  *Depree v. Saunders*, 588 F.3d 282, 290 (5th Cir. 2009).  But in any event, Lyon does not even challenge the correctness of the court's evidentiary rulings.  Further, we presume that the jury followed the trial court's instructions accompanying those rulings.  *See* Fed R. Evid. 105 advisory committee's notes to 1972 Proposed Rules ("The present rule recognizes the practice of admitting evidence for a limited purpose and instructing the jury accordingly.").

The evidence was sufficient to support the jury's verdict that Lyon possessed the firearms.

## III.

Next, Lyon argues that the district court erred in applying an elevated base offense level at sentencing, because the government did not carry its burden of proving that the rifle and the magazine were "compatible," as required by *United States v. Luna-Gonzalez*, 34 F.4th 479, 480 (5th Cir. 2022).  Lyon did not raise his "compatibility" argument before the district court.[1]  This court therefore reviews only for plain error.  *See United States v. Knowles*, 29 F.3d 947, 950 (5th Cir. 1994).  To satisfy the plain error standard,

---

[1] Prior to sentencing, Lyon objected to the elevated base offense level by arguing that "nothing in the PSR indicates that the magazine . . . was in close proximity to either firearm" because the magazine was found in the bedroom while the rifle was found in the kitchen.  At sentencing Lyon asserted that the issue was "whether the firearm . . . is considered a semi-automatic firearm capable of accepting a large-capacity magazine."  He then clarified that objection by arguing the issue was "whether or not there was a large capacity magazine in close proximity to the firearm" because "[t]his magazine was in a small safe or lock box . . . recovered four to five feet away" from the rifle.  These objections concerned only the proximity of the rifle to the magazine, and not whether the rifle and the magazine were compatible.

No. 22-50360

Lyon must show an error that is clear or obvious and that affects his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009).

In cases of unlawful possession of firearms, the U.S. Sentencing Guidelines provide for a "Base Offense Level" of 22 if the offense involved a "semiautomatic firearm that is capable of accepting a large capacity magazine." U.S. Sent'g Guidelines Manual § 2K2.1(a)(3)(A)(i) (U.S. Sent'g Comm'n 2021). The Guidelines define a firearm as "capable of accepting a large capacity magazine" if it

> has the ability to fire many rounds without reloading because at the time of the offense
>
> . . .
>
> (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm.

*Id.* § 2K2.1 cmt. n.2. This section of the Guidelines applies only if the government has shown, by a preponderance of the evidence, that the firearm and the magazine in question are "compatible" with one another. *United States v. Luna-Gonzalez*, 34 F.4th at 480.[2]

In *Luna-Gonzalez*, this court stated that the government had introduced "zero evidence" of compatibility in sentencing a defendant who had pleaded guilty to violating § 922(g). *Id.* The court declined to "catalog the many ways the United States could have satisfied this burden." *Id.*[3] But

---

[2] *Luna-Gonzalez* concerned section 2K2.1(a)(4)(B) of the Sentencing Guidelines, but the same wording recurs throughout the rest of section 2K2.1. It therefore applies equally to section 2K2.1(a)(3)(A), at issue here. *See* Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts 170 (1st ed. 2012) ("A word or phrase is presumed to bear the same meaning throughout a text[.]").

[3] The court nevertheless gave five examples in footnotes of what kinds of evidence the government might introduce to carry its burden: (1) evidence "of what kind of magazines come standard with [a particular] firearm[]" together with evidence that

the court stated that the government's "unsworn response to [the defendant's] written objections" was not sufficient. *Id.* The court therefore vacated the sentence and remanded for resentencing. *Id.*

Since *Luna-Gonzalez*, this court, in at least two unpublished opinions, has found plain error where the district court imposed an elevated base offense level even though the government offered "zero evidence" regarding compatibility. *See United States v. Garza*, No. 22-20338, slip op. at 11 (per curiam) (5th Cir. June 9, 2023) (finding plain error, because the government "concede[d] on appeal that it did not present any evidence . . . that the firearm and magazine were attached or compatible"); *United States v. Romero*, No. 21-50485, slip op. at 4 (per curiam) (5th Cir. Aug. 22, 2022) (finding plain error, because "the United States introduced zero evidence . . . proving that the large-capacity magazine was compatible with [the defendant's] firearm" (quoting *Luna-Gonzalez*, 34 F.4th at 480)).[4]

In Lyon's case, unlike these other cases, there was sufficient evidence in the record to support a finding that the rifle and the magazine found in the trailer were compatible with one another. At trial, Agent Schuler testified

---

"demonstrate[s] that [the defendant] bought the firearm either directly from the manufacturer or in the exact same condition as marketed," *Luna-Gonzalez*, 34 F.4th at 480 n.4 (quoting *United States v. Abrego*, 997 F.3d 309, 313 (5th Cir. 2021)); (2) evidence "describing and demonstrating how to 'fit the large capacity magazine to the rifle,'" *id.* (quoting *United States v. Torres*, 489 F. App'x 968, 970 (8th Cir. 2012)); (3) testimony that "the drum magazine found in [the defendant's] bedroom [was] a Glock magazine . . . and [was] compatible with the [Glock] pistol found in his bedroom," *id.* at 481 n.8 (quoting *United States v. Rosa*, 698 F. App'x 222, 223 (5th Cir. 2017)); (4) testimony that "the firearm would 'accept' the magazine,'" *id.* (quoting *United States v. Davis*, 668 F.3d 576, 576-79 (8th Cir. 2012)); (5) evidence that "some of the large-capacity magazines were attached to . . . their semi-automatic counterparts," *id.* (citing *United States v. Longoria*, 958 F.3d 372, 375 (5th Cir. 2020)).

[4] Though these cases are unpublished, we cite them to show the consistency of our precedent.

that the rifle he found was an "AR-15 rifle," or an "Omni Hybrid tactical AR-15" to be precise.  He also testified that he found an "AR-15 magazine that's loaded with multiple rounds of ammunition."  Though Agent Schuler did not specify precisely what type of ammunition was in the magazine, he noted that he found ammunition packaging and that "[s]ometimes both [.]223 or 5[.]56 ammo comes in these plastic sealed containers."   In conformity with Agent Schuler's testimony, the government's forfeiture notice listed an "American Tactical Imports, model Omni-Hybrid, .223/5.56 caliber rifle" along with a "[c]lear AR-15 style magazine containing 21 rounds of 5.56 ammunition."  This forfeiture notice is included in paragraph 9 of the Presentence Investigation Report ("PSR").[5]   There was therefore a sufficient basis in the record to support a finding that the rifle and the magazine were compatible.[6]

Lyon also argues that the evidence does not show that the magazine was in "close proximity" to the rifle.  He refers only to the magazine that was found in the kitchen.  But he does not contend that the kitchen closet, where

---

[5] A district court

> may adopt the facts contained in a [PSR] without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable.

*United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (quoting *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007)).  The descriptions of the rifle and the magazine in the PSR have an adequate evidentiary basis in Agent Schuler's testimony, and Lyon has offered no evidence to rebut them.

[6] We disagree with the dissent's argument to the contrary.  "Compatibility" is not a talisman.  The government need not put on a witness to recite the magic words, "The rifle and the magazine are compatible," when, as here, for purposes of plain-error review it has offered sufficient other evidence to support a finding of compatibility that is not a clear or obvious error.  Therefore, an AR-15 rifle taking .223/5.56 ammunition and an AR-15 magazine taking .223/5.56 ammunition are compatible under plain-error review.

the rifle was found, was not in "close proximity" to the "safe" on the kitchen counter, where the magazine was apparently found. Rather, he advances a temporal argument, contending that the evidence does not show that the rifle was in close proximity to the magazine *at the time* when Lyon was in the trailer. However, there is no such temporal requirement in the Sentencing Guidelines, and this court will not read one into them.

The district court did not plainly err in applying the elevated base offense level.

## IV.

Last, Lyon argues that § 922(g)(1), the statute under which he was convicted, is unconstitutional under *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Lyon did not challenge the constitutionality of § 922(g)(1) before the district court. This court therefore reviews only for plain error. *See Knowles*, 29 F.3d at 950. There is no plain error where an issue is disputed or unresolved, or where there is an absence of controlling authority. *United States v. Rodriguez-Parra*, 581 F.3d 227, 230-31 (5th Cir. 2009).

In *Bruen*, the Supreme Court "establish[ed] a new test for assessing the constitutionality of a statute under the Second Amendment." *United States v. Smith*, No. 22-10795, slip op. at 5 (per curiam) (5th Cir. Sept. 8, 2023). This court has since had occasion to apply *Bruen*. *See United States v. Rahimi*, 61 F.4th 443, 461 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023). But there is as yet "no binding precedent explicitly holding that § 922(g)(1) is unconstitutional" and "it is not clear that *Bruen* dictates such a result." *United States v. Racliff*, No. 22-10409, slip op. at 2 (per curiam) (5th Cir. Sept. 14, 2023). Because there is an absence of controlling authority here, and because the issue is unresolved, Lyon cannot show plain error. *See Rodriguez-Parra*, 581 F.3d at 230-31.

No. 22-50360

***

The conviction and sentence are AFFIRMED.

No. 22-50360

JENNIFER WALKER ELROD, *Circuit Judge*, concurring in part and dissenting in part:

I respectfully dissent from the majority's conclusion that the district court correctly applied an elevated base offense level at sentencing.[1] I concur in all other respects.

The U.S. Sentencing Guidelines provide for an elevated base offense level if the offense involved a "semiautomatic firearm that is capable of accepting a large capacity magazine." U.S. Sent'g Guidelines Manual § 2K2.1(a)(3)(A)(i) (U.S. Sent'g Comm'n 2021). In *United States v. Luna-Gonzalez*, we explained that the text of the Guideline contains an "unambiguous" compatibility requirement that the firearm be "*capable of accepting* the magazine." 34 F.4th 479, 480 (5th Cir. 2022) (quoting § 2K2.1(a)(4)(B)). In other words, the government must show by a preponderance of the evidence that the magazine and firearm "actually fit." *Id.* at 481.

*Luna-Gonzalez* stopped short of cataloguing the "many ways" that the government could meet its burden, but it cited several cases that are instructive here. In three, the government offered testimony that the

---

[1] I agree with the majority that plain-error review applies to Lyon's compatibility argument. Because I conclude that the government failed to show by a preponderance of the evidence that the magazine and firearm are compatible, the district court committed plain error. *United States v. del Carpio Frescas*, 932 F.3d 324, 332 (5th Cir. 2019). Further, this error affected Lyon's substantial rights. *Molina-Martinez v. United States*, 578 U.S. 189, 201 (2016) ("Where, however, the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights."). We should exercise our discretion to correct this error. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1911 (2018) ("In the ordinary case, as here, the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings.").

11

defendant's firearm accepted the magazine. *United States v. Rosa*, 698 F. App'x 222, 223 (5th Cir. 2017); *United States v. Torres*, 489 F. App'x 968, 970 (8th Cir. 2012); *United States v. Davis*, 668 F.3d 576, 576–77 (8th Cir. 2012). In another, investigators found the firearms with some magazines attached, demonstrating their compatibility. *United States v. Longoria*, 958 F.3d 372, 375 (5th Cir. 2020). And finally, one case suggests that the government "might" show compatibility if it offers evidence that the defendant's firearm came standard with a large-capacity magazine from the manufacturer, and that the defendant bought the firearm directly from the manufacturer or in an unaltered condition from a third-party. *United States v. Abrego*, 997 F.3d 309, 312 (5th Cir. 2021) (vacating sentence where the government failed to meet its burden).

In this case, there is no such evidence. The record reveals only that investigators found an "AR-15 rifle" near an "AR-15 magazine," both of which accepted 5.56 ammunition. But the government offers nothing to show that they "actually fit," as it must. *Luna-Gonzalez*, 34 F.4th at 480. The government might have shown compatibility if it introduced evidence that all AR-15 rifles accept all AR-15 magazines. Even better, it could have demonstrated that *this* AR-15 rifle accepts *this* AR-15 magazine. It did neither.

Recognizing its own lack of evidence, the government urges us to make a "common-sense inference[]" of compatibility. Common-sense inferences may be permissible during sentencing, *United States v. Caldwell*, 448 F.3d 287, 292 (5th Cir. 2006), but speculation is not, *United States v. Conner*, 537 F.3d 480, 491 (5th Cir. 2008) ("[S]peculation as to the existence of these facts [is] an insufficient basis to enhance [a] sentence."). The majority speculates that the magazine and rifle are compatible, but in doing so, it spots the government evidence that it did not produce.

Without evidence of compatibility, the government has failed to meet its burden.  *Luna-Gonzalez*, 34 F.4th at 481–82.  I respectfully dissent.